Mr. Chief Justice Sharkey
delivered the opinion of the court.
The note on which this suit was brought, bears date the 2d ■ of May, 1838, and was payable twelve months thereafter. The suit was brought on the 22d of April, 1847. The defendant pleaded .the statute of limitations. The note was payable to - the Commercial Bank of Natchez, against which a proceeding in the nature of a quo warranto was commenced on the 8th of *512 March, 1844, and injunction issued under the provisions of the act of the legislature of 1843. A judgment of forfeiture was tendered by the circuit court, in June, 1845, and a trustee appointed, which judgment was affirmed by this court on appeal, in May, 1846. The question raised and discussed, is, “ Did the injunction issued against the bank, under the act of 1843, suspend the operation of the statute of limitations 1 ”
To the question propounded I respond in the negative, and proceed to state the reasons on which that response is founded. In the first place, there is no such exception in the statute. The act of 1822 contains a saving in favor of infants, femes covert, and persons insane, and then stops. But it is insisted, that, although there is no saving or exception in the statute which expressly reaches the present case, yet, as there was no person who could sue pending the injunctioh, it is within the reason of the exceptions in the statute. The statute of limitations is one of good policy; it is a'Statute of repose, and should not be so construed as to defeat the object intended, by creating exceptions in cases supposed to be analogous in principle to those expressly excepted. To do so, would be to undertake to supply defective legislation, by ingrafting new provisions on the statutes. And if it can be done in regard to one statute, it can also be done in regard to all. The subject was before the legislature, and certain exceptions created; we must suppose that the legislature went as far in making these exceptions as was deemed necessary or proper. Cases not excepted by the legislature cannot be excepted by the courts. We are to construe existing laws, and not to enlarge their plain provisions by supplying supposed omissions. In the construction of the statute of limitations, it is a settled rule that courts must adhere to the exceptions in the act, and where there is not an express exception, the court cannot create one. McIver v. Ragan, 2 Wheat. 25; Demarest v. Wynkoop, 3 Johns. Ch. R. 129; Ang. on Lim. 205. There are cases decided by this court which may seem to establish a different rule, but they do not; they rest upon plain legislative exceptions, contained in the legislation on kindred subjects. Thus, in the case of Dowell v. Webber, we decided *513 that as an administrator is exempted from suits for the space of nine months after administration, that time must be excluded from the operation of the general statute of limitations. By declaring that an administrator should not be sued until the expiration of nine months, the legislature created an exception, as much so as if it had been contained in the statute of limitations. Both acts have rélation to the time in which suits may be brought, and they must be construed together. One declares that suits must be brought within six years after the cause of action shall have accrued; the other declares that, in a given case, suit shall not be brought within a certain time. They are inconsistent unless one be construed as creating an exception. This it must do, or it repeals the general statute in certain cases, or is itself repealed. The bar only begins to run after a right to sue has accrued, and continues concurrently with the right to sue. By suspending the latter, the former is necessarily also suspended. ■
The case of Abbott v. McElroy, 10 S. & M. 100, has been cited, but it does not support the position contended for; on the contrary, it is opposed to it. The question was this, Does the statute continue to run after the death of the debtor, before administration taken out, or is it suspended because there is no party in being who can be sued? We decided that the statute, having commenced running during the life of the debtor, is not suspended by his death; that having commenced running, it continues to do so, _ notwithstanding the death of the party; though it is otherwise where the debt was not due in the lifetime of the debtor; there the statute does not begin to run until there is a person who can be sued. The same principle applied to this case would defeat the action. The statute had been running four years before the injunction was issued.
But there is another view of this question,' which I think even more conclusive than the foregoing. There was no disability to sue growing out of a positive statutory prohibition. I do not mean to controvert the well settled principle, that an injunction before suit brought, has, in general, the effect to prevent the party enjoined from bringing his suit. The power of a court of *514 chancery to control proceedings in the courts of law, is exercised in cases where full justice cannot be administered under the forms of the law. It is not an opposing jurisdiction, but a more comprehensive one, intended to mitigate the rigor of the law, by applying more liberal rules in the attainment of justice. Where the inflexible rules of law would work hardship or oppression, a court of chancery may interpose its more ample powers, and accomplish justice by enjoining proceedings in the courts of law. An injunction is granted at the discretion of the chancellor upon the special circumstances of the case, and may be continued or not as the justice of the case may require. 1 Madd. Ch. R. 125 ; Boyd v. Anderson, 2 Johns. Ch. R. 202. As the chief object of an injunction to stay proceedings at law, is to prevent the plaintiff at law from obtaining an undue advantage of the defendant, it should not be granted where it must necessarily operate to the prejudice of the other party. This would be to pervert its object, and to employ the powers of the court to defeat right. Surely no chancellor would grant an injunction which would prevent-a suit at law, when, by doing so, the cause of action would be barred. In such a case, the injunction should go no further than to restrain the collection. Or if an injunction had been granted, and the statute was about to create a bar, certainly it would be dissolved on application, so far as to allow the party to bring his suit. In most cases perhaps no such difficulty can occur, as the party who goes into chancery usually withdraws the whole matter from the courts of law. But it may occur when the injunction is granted until some collateral question is tried; as in this case, it was granted until the question of forfeiture could be tried. But suppose the injunction should be granted without restriction as to its effect, it does not operate on the cause of action, by creating a bar which can be pleaded like a statutory prohibition. It operates on the person, merely by subjecting him to punishment for a contempt in case suit should be brought. A suit which has been brought in violation of an injunction will not, for that reason, be dismissed. The party injured is left to his recourse against the person of the plaintiff for a contempt. This point was decided *515 in Robertson, Trustee, v. Hoy, 12 S. & M. 566. In punishing for a contempt by breach of injunction, the court will consider whether it was erroneously granted or not. Sullivan v. Judah, 4 Paige, 444. Now I would ask, whether a chancellor would be likely to inflict any punishment for bringing suit, when it was obviously necessary to prevent the loss of the debt? A contempt is a wilful disregard of process. But, furthermore, it does not appear by this record whether the injunction would have been even violated by bringing suit. What amounts to a breach of an injunction, will depend upon the form of the process, and the nature of the act prohibited. Daniel, Ch. Pr. 1907. Then, if it be true that an injunction is granted or retained at the discretion of the chancellor, and should not be granted when it will work an injury to the other party, or, having been granted, it should not be retained when its retention will be attended by such a consequence, it seems to follow that it does not create such á disability as to stop the operation of the statute of limitations. We must suppose that a chancellor would not abuse his discretionary power. But if he should do so, such act does not seem to present a legal ground for stopping the operation o,f the statute of limitations. Certainly, the statute does not stop running merely because - a chancellor may happen to act indiscreetly in granting an injunction. Nothing short of a positive legislative prohibition can have that effect.
These remarks have reference to an injunction granted in the usual mode. Do they apply with equal propriety to the injunction issued under the act of. 1843 by the clerk ? The validity and nature of this injunction were very fully considered in the case of the Bank of Rodney v. The State, 4 S. & M. 439. By a majority .of the court, the sixth section of the act which gives the injunction was sustained as a valid law. And although there was a difference of opinion' as.to the court in which the process was to be returned, the result of that decision seems to justify the conclusion, that it was what the act declares it to be, an injunction having “the office and effect of an injunction in chancery.” If it was an injunction in chancery, whether returnable in the circuit or chancery court, it was subject to the *516 control of the court, precisely as other writs of that description are. If it were not, it was more than an injunction in chancery, and could not be sustained, as there was not a majority of the court in favor of giving to it any other character. Then I think it must follow, that the court had power so to limit or qualify it as to authorize the bank to bring its suit. If it had not this power over the injunction, it was far more than an injunction in chancery, and the act stood confessedly void as cutting off all remedy, and as such presented no impediment to the right to sue. My conclusion is, then, that there was no such obstacle thrown in the way of a suit by a legislative act as to stop the operation of the statute after it had begun to run. I may add, that in a case reported in Cameron & Norwood’s Rep. (p. 71) it was .expressly ruled, that an injunction did not suspend the operation of the statute of limitations; and this is the only case that has been found directly on the point. I am therefore of opinion that the judgment should be affirmed. See also Barker v. Millard, 16 Wend. 572. It may be well to remark, that that part of the act of 1843, which directed the continuance of the injunction until the quo warranto should be disposed of, was expressly held to be invalid by a majority of the court in the Bank of Rodney v. The State, 4 S. & M.
Smith, J., concurs.