Ingraham et al. *v.* Regan.

23  213
89  505
89  511
89  523
j89  578

## INGRAHAM & READ *vs.* JOSEPH REGAN.

The injunction issuing under the statute, prescribing the method of proceeding against banks which have forfeited their charters, does not stop the running of the statute of limitations, as to claims held by such banks.

A note, belonging to the Grand Gulf Railroad and Banking Company, and due in 1838, was sued upon by the bank in its corporate name, in 1841. In 1842, the bank, without indorsement, assigned, transferred and delivered the note to I. & R., for the benefit of her creditors. In November, 1843, proceedings in the nature of a *quo warranto* were instituted against the bank, and the statutory injunction issued. In April, 1846, judgment of *ouster* was rendered against the bank, and that judgment, in January, 1848, was affirmed upon appeal. On the 11th of April, 1848, upon a suggestion of the dissolution of the corporation, the suit upon the note was formally abated.

Ingraham et al. *v*. Regan.

In September, 1848, I. & R. filed their bill against the maker of the note, setting forth the facts of the case, and praying a decree for the payment of the note. *Held*, that the remedy upon the note was barred by the statute of limitations.

In equity, the defence of the statute of limitations, where the bill, upon its face, shows that the claim asserted by the complainant is barred, may be taken advantage of by demurrer.

The act of 1822, (Hutch. Code, 827, § 14,) though extracted from the statute of 21 James 1, ch. 16, sec. 4, differs from the latter in confining the right of the plaintiff, his heirs, &c. to bring a new suit, after arrest or reversal of the judgment, to the actions and cases specified in the preceding sections of the statute. In the English statute the right is not thus expressly limited, but extends to "all such cases;" thus laying a broad and visible ground, upon which cases, not embraced by the letter of the statute, might, by an equitable construction, be brought within the operation of the proviso.

An act of a state legislature, transcribed from the statute book of a foreign state, stands upon the same footing, and is subject to the same rules of construction as all other legislative enactments; though the construction placed upon the law by the courts of the country in which it was first enacted, is entitled to very great consideration, and very strong reasons should exist to warrant a departure therefrom.

The equity of the English statute of 21 James 1, ch. 16, sec. 4, was held, in England, to apply only to two classes of cases. 1. Where the statute bar had been completed pending a suit which had abated by the death of the plaintiff. 2. Where the bar had been completed pending a suit by a *feme sole*, which had abated by her subsequent marriage. *Held*, that the facts of the present case do not bring the appellants within the operation even of such an equitable construction of our statute.

*Held*, also, that the present suit is not a new suit, commenced by the same parties, or by parties who are privies in interest with the plaintiffs in the suit which had abated.

It is not the province of courts to engraft exceptions upon statutes, or to impair their practical utility by the introduction of refinements, but rather to follow their terms, and adhere closely to their provisions.

In error from the southern district vice-chancery court; Hon. James M. Smiley, vice-chancellor.

The opinion of the court contains a sufficient statement of the facts of the case, together with the briefs of counsel.

*J. B. Coleman*, for appellant.

The demurrer in this case was properly sustained by the vice-chancellor.

Ingraham et al. *v.* Regan.

1. The bill avers that the assignment was made by the Grand Gulf Bank to Ingraham & Read, for the benefit of creditors, but does not allege that there are now any creditors. They came before the court then as trustees, asking the interposition of the court, not for their own benefit, but for that of the creditors. Now we hold that their right to relief depends upon the fact of there being creditors at the time of the filing of the bill, and that the bill should distinctly aver this fact. Without a *cestui que trust*, there can be no trustee. Story's Eq. Pl. 191, § 216.

2. The bill shows upon its face that the note upon which a decree is sought to be obtained, is barred by the statute of limitations. It is dated March 12, 1838, and is payable four months after date. It was consequently due, and the statute commenced running on the 15th July, 1838. The bill was not filed until the 13th September, 1848, more than ten years after the maturity of the note. That the defence of the statute of limitations can be set up in chancery, on demurrer to the bill, where the bill itself shows that the claim is barred, is well settled. Story's Eq. Pl. 378, 389, 581.

It is equally well settled, that courts of equity, though not named in a statute, are governed by it. *Iler* v. *Routh*, 3 How. 296 ; Ang. on Lim. 339 – 341.

It follows, then, that unless the complainants have set up some matter in their bill, which will exempt them from the operation of the statute, their demand is barred. This they have attempted to do, —

1st. By the allegation, that from the date of the filing of the information on the 13th November, 1843, until January, 1848, they were restrained by the injunction from collecting any part of the money mentioned in said note.

2d. By the allegation that the Grand Gulf Bank instituted suit on the note in the Claiborne circuit court, in April, 1841, which suit was abated by order of the court, April 11, 1848, on suggestion of the dissolution of said corporation. As to the first ground of exemption from the operation of the statute, namely, the pendency of the injunction, it will be observed that the bill only alleges that they were restrained

from collecting the money.   There is no allegation that they were restrained from instituting suits.   The statute under which the injunction was issued, does not enjoin the banks from instituting suits.   It only restrains them from collecting money.   Hutch. Code, 330, 331, § 6, 7.

This injunction, then, restraining them from collecting the money, but not restraining them from suing for it, and proceeding to judgment, can surely have no effect in exempting them from the bar of the statute.   But suppose, for the sake of argument, that the injunction restrained them from suing, it must be borne in mind that the note matured on the 15th July, 1838 ; on that day the statute of limitations commenced running ; the injunction was not issued until the 13th of November, 1843, more than five years after the maturity of the note, and one year and nine months after its alleged transfer by the bank.   " When the statute of limitations once begins to rule, no intervening disability stops it ; when, therefore, a decree was had against an administrator, and he afterwards died, the statute will continue to run from the date of the decree, notwithstanding his death, and notwithstanding no one has been appointed in his place."   *Mc Coy* v. *Nichols*, 4 How. 31.

The principle settled in this case, we consider conclusive of the point now under discussion.   The statute has clearly commenced running ; indeed, it had nearly finished its race ; its headway was not, says our court, to be stopped, or even checked by the intervening disability.   The direct point has, however, been settled ; and it may now be considered incontrovertible law, that " An injunction restraining a party from suing, does not suspend the running of the statute of limitations."   *Rice* v. *Lowan*, 2 Bibb, 149 ; Angell on Lim. 349 ; *Barker* v. *Millard*, 16 Wend. 572 ; 2 U. States Digest, 808, § 340, 341.

The party enjoined is not, say the books, without his remedy.   Upon application to the court which granted the injunction, he is entitled to have it modified, so as to be enabled to institute suit to avoid the bar, or the court will, in its discretion, enjoin the opposite party from setting up the statute. Here, however, there could have been no necessity for any such

Ingraham et al. *v.* Regan.

application, nor do we see what possible effect this injunction could have had. Suit had been instituted on the note the 1st of April, 1841, more than two years before the injunction was issued, and was pending according to the allegations of the bill until after its dissolution. We submit, then, that the issuance of this injunction does not furnish the complainants with any ground for claiming an exemption from the operation of the statute of limitations, for the reasons —

1. That the injunction did not restrain the bank or the complainants from suing on the note.

2. That even if it did, the running of the statute was not thereby suspended.

3. That it could have interposed no obstacle in this case, as suit had been commenced before its issuance, and was pending until after its dissolution.

We come now to consider the second ground of exemption from the operation of the statute relied upon in the bill, namely, the abatement of the suit at law upon the note, alleged in the bill to have been on the 11th April, 1848, but as we shall show from the exhibits to the bill to have been in April, 1846. The argument of complainants will be, that this abatement of their suit at law brings them within what is facetiously termed the equity of the statute. Under this equity of the statute, it was held by the judicial legislation of the English courts some centuries ago, that "When a person brings an action within the six years, and dies, whereby the action abates, his executor or administrator may bring a new action within a year." 2 Salk. 425; 1 Lutw. 260.

"So, if a *feme sole* commence a suit, pending which the six years expire, and she then marries, whereby the suit abates, she and her husband may recently bring a new action." 2 Saund. R. 63, *g*, *h*, n. 6.

It is familiar to every lawyer, that from the time when this equity was interpolated upon the statute of James, until within the last half century, the courts of England were waging a war of extermination against it. They looked upon the statute as iniquitous, and upon every defence set up under its provisions as unconscientious. Their steady aim appeared to be, to take

every case from out its operation. The most unequivocal denials were tortured into admissions, until the statute was rendered almost a nullity. Upon the result of this judicial legislation, particularly in regard to acknowledgments, it was happily said by Lord Brougham, that if a fishing witness approached a man with a claim barred by limitation, the only safe course for him to pursue would be to knock him down; he might then escape with an action for assault and battery, but if he opened his mouth he would have the debt to pay. The ground taken by the English courts, and upon which they erected this equity, was that the statute does not bar the right; that it only takes away the remedy. 2 Saund. 64, n.

And the editor of Saunders' Reports, after acknowledging this, expresses his regret that it was ever interpolated upon the statute, and says, " And after all, it might perhaps have been as well if the letter of the statute had been strictly adhered to; it is an extremely beneficial law, on which the security of all men depends, and is therefore to be favored; and, although it will now and then prevent a man from recovering an honest debt, yet it is his own fault that he postponed his action so long," &c. 2 Saund. R. 64, n. 6.

The modern construction of the statute is altogether different. Even in England, public opinion has forced the courts to desist to a great extent from their warfare against it, and to assume a position more akin to that which has been taken by the courts generally in the United States, and especially in this state. The statute is now considered one of repose, is looked upon with favor by the courts, and the same rules of construction extended to it, which prevail in regard to other statutes. All the subtilties and refinements of the English courts in regard to acknowledgments, which originated at the time when this equity was raised, and which had their origin in the same feeling of hostility, have been swept away. It is now the settled rule, that a party must bring himself within the express exceptions of the statute; that the courts will follow its letter and intent, and no longer incorporate upon it exceptions not specially embraced in it by the legislature. Angell on Lim. 204, 532; *McIver* v. *Ragan*, 2 Wheat. 25;

*Sucia* v. *De Graaf*, 1 Cow. 356; *Davidson* v. *Morris*, 5 S. & M. 564; *Smith* v. *Westmoreland*, 12 Ib. 663.

Apart from the foregoing authorities, (and others both in this and other States might be cited to the same effect,) it is plain that this equity of the statute never could have been recognised by the courts of Mississippi. It has already been shown that it is based upon the assumption that the statute does not bar the right, that the remedy only is taken away. Now this court has expressly decided that the right is barred. *Davis* v. *Minor*, 1 How. 188 – 191.

And such has also been the course of decision in Kentucky, Virginia, and other states. 3 J. J. Marsh. 363, 373; 3 Litt. 281; 3 Hen. & Munf. 57; 5 Cranch, 358; 11 Wheat. 361; Martin & Yerger, 426.

But suppose that the equity of the statute exists, and that it was recognised by the courts of this state, it is hardly to be presumed that they would go further in adopting it than did the courts in England. There is, however, a conclusive reason why the equity of the statute cannot exist in this state. It is based upon the saving clause of the statute of James, of which the 14th section of an act of 1822, (Hutch. Code, 827,) is a copy, or nearly so. Now this 14th section was repealed by the act of 1844. Hutch. Code, 832, § 18.

That act contains no such saving as the 14th section of the act of 1822. The 17th section of the act of 1844 provides, that " No cumulative or additional disabilities shall be added, or allowed to persons for whose benefit the savings and provisos in this act have been inserted." They have in the act itself provided for all the savings that they intend shall be allowed, and, to make it certain that no others shall be engrafted on it, they have inserted the prohibition contained in the 17th section. The 18th section repeals all acts and parts of acts conflicting with and contrary to its provisions. It therefore of necessity repeals the 14th section of the act of 1822, because it conflicts with every section of the act of 1844, and with its whole tenor and spirit. But suppose the 14th section of the act of 1822 to be still in force, and that this court are disposed to engraft upon it the equity of the English statute of James, the question then

presents itself, Have the complainants filed their bill within twelve months after the abatement of the suit at law? When did the suit abate? We say, on the day and at the moment of the dissolution of the corporation, not at the time the order of the court was made. The order of the court is nothing more than an entry upon the record, or perhaps more properly a judgment of the court that the suit has abated by the dissolution of the corporation. The dissolution of a corporation is analogous in all respects to the death of a natural person. " It is the death of a party to a suit that abates it, and not the judgment of the court." Stephen on Plead. 400; 2 Saund. R. 72·*i*, note.

When, then, did this corporation die? When was judgment of forfeiture rendered against it? We answer, at the April term 1846 of the Claiborne county court. It is true, that it is alleged in the bill, that judgment of forfeiture was rendered against the bank, at the January term 1848 of this court; but the bill also avers, that judgment of forfeiture was rendered at the April term 1846, from which an appeal was taken to this court, by whom the judgment of the court below was affirmed. What was the effect of the judgment of affirmance in this court? An adjudication that the judgment of the court below was correct. Now if that judgment was correct, what was its operation? Unquestionably to dissolve the corporation on the day of its rendition. This court, in affirming the judgment of the court below, say, in effect, that the corporation was dissolved on the day that judgment was rendered. A judgment is rendered in the circuit court against a defendant upon a promissory note. The defendant carries the case to this court, where the judgment of the court below is affirmed. When does the lien of the plaintiff's judgment commence? Unquestionably from the date of its rendition in the lower court. And why? Because the affirmance of the judgment here is an acknowledgment by the court of last resort that it was rightly rendered. We submit that the analogy between that case and the one at bar is complete. If this position is correct, then the suit at law abated in April, 1846. This bill was filed September 13, 1848,

more than two years and five months after the abatement. Where then is complainant's equity ?

*George S. Yerger*, on the same side.

*H. G. Ellett*, for the appellee,

Contended that the cause of action was barred by the statute of limitations, and that nothing was stated in the bill sufficient to take the case out of the operation of the statute.

I. The first ground relied on by the appellants, namely, the effect of the *quo warranto* injunction, has been settled by the court in the case of *Robertson* v. *Alford*, 13 S. & M. 509.

II. The other point is, that the bill having been filed within one year after the abatement of the action at law brought by the bank, the case is brought within the equitable construction of the 4th section of 21 James 1, which is substantially re-enacted by the 14th section of the act of 1822. Code, 827.

1. That the only cases to which this equitable construction of the statute of James had ever been extended even in England, were two ; first, where a person brings an action within six years, and dies, his executor or administrator may bring a new action within a year; and secondly, where a *feme sole* commences a suit, and then marries, whereby the suit abates, the husband and wife may jointly bring a new action within a year. 2 Saund. R. 63, *g*, *h*, n. 6.

2. That there is no analogy between the present case and those in which the equity has been allowed. The executor or administrator had no right to sue until after the death of the party. The husband and wife had no right to sue jointly until after the marriage. But here the bank brought a suit, and then assigned the cause of action. The assignees then acquired a right to sue during the existence of the bank. They do not now sue in the same right in which the bank sued, but in an adverse right, which is barred itself by limitation. If the suit were by trustees coming in under, and as successors to the bank, there might be some analogy. But as it is, there is none.

3. That in fact the suit is not brought within a year after

19*

the abatement of the first suit. A suit abates at the time of the death of the party, and not at the date of the order of abatement. Stephen on Plead. 400. Here the judgment of ouster was rendered in 1846, and affirmed in 1848. It is well settled, that the judgment of affirmance relates to and takes effect from the date of the judgment below.

4. That no such equitable construction can now be given to our statute. That there is no necessity for it, as our statutes provide for the revival of the suits to which the doctrine was applied in England. That the doctrine itself originated in judicial hostility to the statute, and a desire to repeal it by interpretation. The construction alluded to is now condemned in England, (2 Saund. R. 64, note 6,) and is repudiated in America. *Smith* v. *Westmoreland,* 12 S. & M. 665; *Henderson* v. *Ilsley,* 11 Ib. 9; 8 Ib. 89; 1 How. 183; 8 Porter, 211; 3 Alab. R. 756; 5 Ib. 90; Ang. on Lim. 204.

The principle, that the construction put upon the English statute forms a part of the statute itself, when adopted here, can only apply to statutes adopted here before the independence of the states.

5. But the very foundation of this equity is taken away by the repeal of the 14th section of the act of 1822. The act of 1844 saves no disabilities whatever in actions upon simple contracts, except absence from the state, not even coverture or infancy. Code 1830, sec. 4; Ib. 831, sec. 10. The 17th section, p. 82, provides that, " In the construction of this act, no cumulative or additional disabilities shall be added or allowed to persons for whose benefit the savings and provisos of this act have been inserted." The 14th section of the act of 1822 is not re-enacted, and the 18th section enacts that " All acts and parts of acts conflicting with, and contrary to, the provisions of this act, be, and the same are hereby repealed." Any creating a disability not allowed by this act, is evidently in conflict with it, and therefore the 14th section of the act of 1822 is repealed. The act of 1844 is made to shorten limitations, and to take away disabilities and exceptions, and hence all exceptions in the old law not contained in the new one, are expressly abolished. The only salvo is that the repeal

shall not revive a cause of action already barred, "nor shall the passage of this act stop the running of the limitation contained in any other act, when the same may have commenced before the passage thereof;" which simply means that where the old act will bar the claim sooner than the new one, the party may plead the old act, or, in other words, that the party has the option to plead either act.

Mr. Chief Justice SMITH delivered the opinion of the court.

This is an appeal from a decree of the vice-chancellor for the southern district.

The facts alleged in the bill of the appellants are as follows: On the 12th of March, 1838, the appellee made and delivered his promissory note, due four months after date, to the Grand Gulf Railroad and Banking Company for $2700.

On the 10th of February, 1842, this note with others was transferred, assigned, and delivered by the bank, without indorsement, to Lindsay and Ingraham, for the benefit of her creditors. Lindsay having died, the bank, jointly with Ingraham, the survivor of Lindsay, on the 31st of December, 1842, without indorsement, transferred, assigned, and delivered the said note to the said Ingraham and one Read, for the same purpose.

Proceedings in the nature of a *quo warranto* were instituted against the bank on the 13th November, 1843. And a judgment of ouster was rendered against it at the April term, 1846, of the circuit court of Claiborne. This judgment, upon appeal, was affirmed in this court at the January term, 1848, whereby the corporation was dissolved.

From the time of filing the injunction, which issued upon the institution of the said proceedings, until the final disposition of the case in this court, the appellants allege, they were restrained by the operation of the said injunction from attempting the collection of the money due on the said note.

On the 1st of April, 1841, prior to said assignment, the bank had instituted suit in her corporate name on the note. This suit was brought in the circuit court of Claiborne county, and was formally abated by the order thereof on the 11th of April,

1848, on suggestion of a dissolution of the corporation. The bill was filed in September, 1848; and the prayer is for a decree against the appellee for the amount of the note.

A demurrer to the bill was filed, and a decree pronounced sustaining the demurrer and dismissing the cause.

The ground assumed in support of the demurrer was, that it is shown upon the face of the bill, that the claim sought to be recovered was barred by the statute of limitations.

The statute bar in regard to actions at law is applied in equity to analogous cases. 1 Story's Eq. 544. *Iler* v. *Routh*, 3 How. 296. And it is not contested, that if the bill showed upon the face of it that the claim was barred, the objection was properly taken by demurrer.

The note, for the recovery of which the bill was filed, matured on the 15th of July, 1838. As we have seen, more than ten years had elapsed after the note became due, before the commencement of this suit. Hence, unless it has been shown that a state of facts existed which took the case out of the operation of the statute, the claim was barred, and consequently that the decree of the vice-chancellor was error.

It has been settled by this court, in the case of *Robertson* v. *Alford*, 13 S. & M. 509, that the injunction, which issued under the act prescribing the method of proceeding against banks which have forfeited their charters, does not suspend the operation of the statute of limitations as to claims held by them.

It will not be contended that the appellants occupy a more favored position in respect to the statute than their assignor. It is evident upon the principle recognised in that case, that if the claim in controversy had remained the property of the bank, by the general provisions of the statute it would have been barred. Therefore, unless this case falls within some exception to the law of limitation, the claim is equally barred in the hands of the appellants.

This action, it is alleged, was commenced within one year after the abatement of the suit originally instituted by the bank. And it is argued that, although not within the letter, the case is within the equity of the 14th section of the act

of 1822, (Hutch. Dig. 827) ; hence, that the statute bar does not apply.

The provisions of this 14th section were extracted from the 4th section, chap. 16 of the statute 21 James 1. There is, however, a difference between the two, not unimportant when the inquiry is made, whether, upon an equitable construction, the same or a wider operation should be given to the former.

This difference consists in the express and unqualified limitation placed by the former upon the right of the plaintiff, his heirs, executors, and administrators, after arrest or reversal of judgment, to bring a new suit, confining the right to the actions and cases specified in the preceding sections of the statute ; whereas, by the proviso in the 16th chapter of the statute of 21 James 1, this right to commence a new suit is not limited, expressly, to the actions or cases enumerated, but extends to " all such cases." Thus laying a broad and visible ground upon which cases not embraced by the letter, might by an equitable construction be brought within the operation of the proviso.

This statute in regard to limitations was not a favorite with the judiciary of England. They were certainly liberal to the suitors in their courts who claimed an exemption from its operation, and appear to have acted upon a fixed determination to break the full effect of the law by the recognition of exceptions based upon the equities of the act. In this spirit, the earlier cases arising under the statute were decided ; and the judgments in these cases have settled the interpretation.

The fourth section was held to apply, not only to cases where suit was brought after an arrest or reversal of the judgment, but to cases where a new suit had been brought after an abatement of a former one for the same cause of action. Thus, where the action had abated by the death of the plaintiff, his representative was permitted to institute a new suit within the time limited, although the time required to bar the claim had been out pending the original actions. The same exception was held to apply in cases, where suit was brought

by husband and wife, after abatement of a former suit insti-
tuted by the *feme* whilst *sole*, and which had abated in con-
quence of her subsequent marriage. *Matthews* v. *Phillips*, 2
Salk. 424; *Wilcox* v. *Huggins*, 2 Strange, 907; *Middleton* v.
*Forbes & Wife*, Willes, R. 259; 2 Saund. R. 63, *g, h*, (note);
Ballan. on Lim. 169, 170, 171.

Many of the elder states of the confederacy re-enacted the
British statute in reference to the limitations of actions, or
passed laws embracing its substantial provisions. In all of
which the received interpretation in England was adopted.
1 Wash. R. 302; Riley's Law Cases, 195; 1 Spen. R. 80; 2
Hawks, R. 357; 16 Pick. 313; 9 Verm. R. 399; 1 Harr. &
McH. R. 518; 3 How. 39.

Hitherto, in Mississippi, no question has arisen which in-
volved a construction of the 14th section of the act of 1822, in
regard to limitations. But it is contended that we are bound
by the construction placed upon the act, both in England
and the United States, at the time of its adoption by Mis-
sissippi.

It is a rule in the construction of statutes, which appears to
have been uniformly observed by the supreme court of the
United States " To adopt the construction made by the courts
of the country by whose legislature the statute was enacted."
*Dialogue* v. *Pennock*, 2 Peters, 18; *Kirkpatrick et al.* v. *Gib-
son*, 2 Brockenb. 388; *Cathcart* v. *Robinson*, 5 Peters, 281.

The same rule, subject to some modification, has been
generally applied in the state courts, in the construction of
statutes, which had been admitted to operate within their
jurisdictions, before a separation from the empire took place.
The construction placed in England upon the statutes, was
considered as accompanying them into the colonies, and by
them silently adopted as integral parts of the statutes them-
selves.

But a distinction exists, in the very nature of the case,
between a statute of the British empire, which had been ad-
mitted to operate in one of her dependent colonies, and a
law, although transcribed from the English statute-book, en-
acted by a sovereign state. In this case the statute, like all

other legislative enactments, would stand on the same footing, subject to the same rules of construction. It must, however, be conceded, that the construction made by the courts of the country where the law has been enacted is entitled to very great consideration, and that very strong reasons should exist to warrant a departure therefrom.

But admitting, by way of argument, that we are bound to adopt the same construction in reference to the 14th section of the statute under consideration, which had been placed in England on the 4th section, 16th chapter of that of James 1 ; the question arises, Whether the case at bar is within the equities of the statute ?

As we have above seen, the equity of the fourth section was held to apply to but two classes of cases. 1. Where the statute bar had been completed, pending a suit which had abated by reason of the death of the plaintiff; and 2. Where a suit brought by a *feme sole* had abated in consequence of her subsequent marriage ; the time requisite to bar having run out whilst the action which was pending.

It is not the cause or the means, whereby the original suit has abated, which furnishes the ground for extending the equity of the statute in either of these cases. The basis of the equitable application of the statute, is the assumption that a close analogy exists between parties so situated, and the persons expressly provided for in the letter of the act. Hence, if the appellants stood in the same relation to the defunct bank which an administrator does to his intestate, or a husband and wife in a new suit, commenced under this construction of the law, do to the action originally instituted by the latter whilst a *feme sole*, there would be no question, according to such construction, that they are not barred.

But this we do not hold to be the case. The appellants who claim, by virtue of a contract of assignment, certainly do not stand in the character of the representatives of the bank. Nor is there such a privity of interest between them and the bank, as could warrant the assumption that the present suit was an equitable continuation of the action which had abated.

They were not parties to the record in the original suit.

Their interest commenced with the assignment, by which they acquired an equitable right to the money, for the recovery of which that suit had been instituted. But this did not, in any sense of the terms, make them parties to it. The bank alone was responsible for the costs of suit, and subject to the equitable right which, by the assignment, became vested in the appellant; she had the undoubted right to prosecute the suit, and collect the money, unless restrained by them. The present suit, therefore, is not a new suit, commenced by the same parties, or by parties who are privies in interest with the plaintiffs, in the suit which had abated.

This court, in the construction of our statutes, have been careful to follow their terms, and to adhere closely to their provisions. This course has been always rigidly observed in the interpretation of the different provisions of the statute of limitations. In *Smith* v. *Westmoreland,* this court say, " It is not the province of courts to engraft exceptions upon statutes, or to impair their practical utility by the introduction of refinements." To hold that the situation of the appellants exempts them from the operation of the statute, would be to add another exception, which is not warranted by either the English or American authorities.

The decree is affirmed.

In this case a petition was filed for a re-argument; but the prayer of the petitioner was denied.