COLLIER, Plaintiff in Error, *vs.* SWINNEY, Defendant in Error.

1. The law which controls the liability of common carriers does not begin to apply until the actual bailment is made. The act of God will not excuse a man for failure to comply with an absolute contract to receive and transport goods at a future time, merely because he is a common carrier.

### *Error to Saline Circuit Court.*

*Clark*, for plaintiff in error, contended that the law governing common carriers does not apply. The defendant, though a common carrier, took upon himself, by his express contract, a duty greater than the law would impose, and having done so for a legal consideration, he cannot set up the acts of God as any excuse for his non-compliance with the contract. He ought to have guarded against such contingencies in his contract. Chitty on Contracts, 734. *Thompson* v. *Miles*, 7 T. R. 384.

The only acts of God which would excuse a common carrier are inevitable accidents not foreseen by him, and against which he could not guard. In this case, the evidence showed none such. On the contrary, it showed that, though the Wa-

pello could not run, other boats were running. The contract of the defendant was, to carry the tobacco to St. Louis ; and if the Wapello could not run by reason of low water, he was bound to carry it on some boat that was running. Again, low water could have been forseen. - It is annual and certain. This, therefore, was not such an act. of God as would excuse even a common carrier who had not made a special contract. Story on Bailments, secs. 25, 36, 489, 511. 1 Peters, 66, 91, 221.

If low water would have excused the defendant for a given time, still he was bound to perform, or offer to perform his contract, within a reasonable time after the obstruction was removed.

*Adams* and *Leonard,* for defendant in error. '

The falling of the river was such an act of God as will excuse common carriers from the performance of contracts of affreightment. Story on Bailments, secs. 511, 545. *Bowman* v. *Teal,* 23 Wend. 306. *Parsons* v. *Hardy,* 14 Wend. 215. *Hand* v. *Baynes,* 4 Whart. 204, 210. 3 Kent's Com. 248, 249.

The contract of affreightment was entire and indivisible, and the plaintiff, by shipping ninety-eight hogsheads of the tobacco before there was any breach of the contract on the part of the defendant, put an end to the contract.

The master had no right, as such, to bind the owners to carry freight on any other boat, and if he had, no such contract is declared on, nor is there any proof of any such contract.

GAMBLE, Judge, delivered the opinion of the court.

The defendant, Swinney, was part owner of the steamboat Wapello, and Eaton the master.. She was employed as a weekly packet between Glasgow and St. Louis. Eaton contracted, as master, in 1846, with the plaintiff Collier, to transport the tobacco which Collier then had at Glasgow, to St. Louis, for two dollars and fifty cents per hogshead ; and such other tobacco as Collier might deliver at Glasgow on or before the first of September, was to be transported to St.

Louis, in a reasonable time after its delivery, for two dollars per hogshead. Collier complains that tobacco which he delivered at Glasgow, prior to the first of September, was not transported to St. Louis by the defendant's boat, by reason of which neglect he was compelled to ship it on other boats at a higher freight, and by the delay occasioned by the breach of contract, he lost the advantage of high prices in St. Louis. The defence to the action rested mainly on the facts that the river became so low in July that the Wapello could not navigate it ; and that before it rose, the plaintiff shipped a part of his tobacco on other boats, and finally, that before the river rose, the Wapello was accidentally sunk and lost.

It appeared in evidence that the Missouri became too low for a boat as large as the Wapello to navigate it, as early as the month of July, and continued low until after the first of September, although other boats continued to ply upon it, and transport freight during all that time. It also appeared that, during that period of low water, and after the first of September, the plaintiff shipped on other boats a part of the tobacco which the Wapello was to carry.

The court, at request of defendant, gave the following instructions :

" If the jury find from the evidence that, after the making of the contract, and before there was any breach thereof, the river became so low as to prevent the steamer Wapello from carrying the plaintiff's tobacco from Glasgow to St. Louis, this was an act of God which excused the defendant from the performance of his contract, and the jury must find for the defendant.

" The jury must disregard, as any evidence in the cause, all testimony going to show that the defendant contracted to carry out the plaintiff's tobacco, notwithstanding the river should become too low for the Wapello to run, and all testimony going to show that the master of the boat contracted to carry out the plaintiff's tobacco on another boat, in the event of the river becoming too low for the Wapello to run.

"If the plaintiff delivered at Glasgow three hundred and forty-one hogsheads of tobacco on or before the first day of September, 1846, under the alleged contract, and the defendant was prevented by the low water from carrying out all this tobacco, during the year 1846, and the plaintiff, during the same year, and before the rising of the water so as to enable the Wapello to run, shipped ninety-eight hogsheads of the tobacco on other boats, on his own account, he thereby put an end to the contract, and the Wapello, even if able, was discharged from her obligation to carry out the balance of the tobacco thereafter."

The court, of its own motion, gave this instruction :

The court instructs the jury that, if they believe from the evidence that Nathaniel J. Eaton, as master of the steamboat Wapello, in May, 1846, agreed with plaintiff for the price of two dollars per hogshead, to ship and carry all the tobacco in hogsheads which he, the plaintiff, should deliver at Glasgow, between that time and the first day of September in the same year, to St. Louis, in a reasonable time after the delivery of the tobacco at Glasgow, and that said Eaton did not ship and carry said tobacco from Glasgow to St. Louis, as contracted, and that, at the time of making said contract, William D. Swinney was a part owner of the said Wapello, they should find for the plaintiff, unless they should believe from the evidence that, before there was any breach of said contract, the Missouri river became so low that it rendered it impossible for the said boat, Wapello, to carry said tobacco from Glasgow to St. Louis.

A proper interpretation of this contract is, that the tobacco brought by Collier to Glasgow for shipment to St. Louis, should be transported to St. Louis in a reasonable time after the delivery of each lot at Glasgow, and not that the reasonable time for transportation was to commence after the first of September. It appears by the testimony of the witness, (Garth,) who proved the contract, that the agreement to trans-

port the tobacco in a reasonable time was a part of the express contract of the parties.

1. We have examined the authorities, upon which the defendant relies to show that a common carrier is discharged from liability for any delay in the performance of his contract, when the delay is occasioned by the act of God. A common carrier assumes a liability by the acceptance of goods for transportation, which the law imposes upon him, without any express contract. He is so bound by law that nothing but the act of God or of public enemies will discharge him from his obligation to deliver the goods ; but such acts will discharge him. It is apparently a regular deduction from this admitted law, that the operation of the causes which would exonerate him, if the goods were destroyed and not delivered at all, will exonerate him from liability for delay, when that is the consequence produced by them. The exemption from liability for delay has been carried farther, and it has been held, that, in respect to the *time of delivery*, a common carrier is responsible only for the exertion of due diligence. *Parsons* v. *Hardy*, 14 Wend. 215. In the present case, it is unnecessary to discuss this question. The case before us is not one that requires any investigation of the law of common carriers. The law in relation to the duties and obligations and exemptions of carriers is only applicable to contracts concerning goods which the carrier has received for transportation. It is not supposed that a contract which the master of a vessel may make for the transportation of goods next year, and which goods may not now be in existence, imposes any liabilities or allows of any exemptions because one party is a common carrier. The law applicable to common carriers begins to apply when the actual bailment is made. If, then, a man, who is a common carrier, makes a contract for the future transportation of goods, and at the time appointed fails to have his boat at the place, he is no more exonerated by the act of God from liability for a failure to comply with an express stipulation of his contract,

than any other man would be for a failure from the same cause to comply with any other kind of contract. The rule, in relation to this excuse for a failure to perform a contract, is, that, where the law imposes the duty, the law will acknowledge the act of God to be an excuse for its non-performance ; but where a man, by his own contract, expressly and absolutely undertakes to do any act, he cannot be discharged from its performance by the act of God, because it was his own folly not to have made the proper exception.

It appears that the express contract in this case was to transport the tobacco in a reasonable time. The reasonable time spoken of has no reference to the size or the qualities of the Wapello, as causes for the extension of the time. As the master must be understood to have contracted that his boat should carry the goods, the contract must be understood to mean that his boat *should be able to carry them* in a reasonable time for such transportation. If there was any thing peculiar in the construction of his boat, or if she was of a larger size than ordinary, the risk of delay from such causes is not to be thrown on the owner of the goods. The question as to time, under this contract, is, what was a reasonable time, after the delivery of the tobacco at Glasgow, for Collier to have it delivered in St. Louis, under all the circumstances ? If navigation was entirely suspended when he delivered it, then the computation of the reasonable time would commence upon its re-opening ; if the water was so low as to render the transportation slow and difficult, then the time must be longer than if the water was high. But when the reasonable time is thus ascertained, the master of the Wapello must be understood to have contracted that she would, within that time, transport the tobacco to St. Louis. The Circuit Court seems to have entertained the idea, that, as the transportation was to be on the Wapello, the reasonable time was to be computed with reference to her size and qualities, which would have the effect of throwing upon Collier all the consequences of her defects or unfitness for the navigation. Nay, it is even put more strong-

ly in some of the instructions, for it is asserted that if the water became so low that the Wapello could not navigate the river, then the defendant was discharged from his contract. This is given as the rule, although it appears that other boats were navigating the river during the season. If we regard the master as contracting that his boat shall do what other boats at the time are doing, we will have a better access to the meaning of the parties. Let it be construed as if made by Eaton, without his being concerned with or interested in any boat. Then we will have him undertaking to transport the tobacco in a reasonable time, and the question will not be, whether there was sufficient water for one boat or another, but whether there was an entire suspension of navigation. His office on the Wapello, and the fact that the transportation was to be on that boat, are only material to connect the defendant, as a part owner, with the contract. There was, in the present case, no reason for the application of the rule that the act of God will excuse a common carrier from a compliance with his contract. The only question was, whether he had failed to transport the tobacco, according to the express terms of his contract, in a reasonable time after its delivery at Glasgow. Upon this question the condition of the river is to be considered, only as it might extend the time within which Collier could reasonably expect to have his tobacco transported to St. Louis.

The judgment, with the concurrence of the other Judges, is reversed and the cause remanded for further proceedings.