E. C. WHITTEMORE, Appellant, v. ALBERT M. SILLS, Respondent.

### Kansas City Court of Appeals, June 13, 1898.*

1. **Contract:** PERFORMANCE: ACT OF THIRD PERSON: LAW. While the law never imposes upon any one a duty to perform what is impossible, it allows people to enter into contracts as they please and the interference of a third person will not excuse performance. Case of unlawful acts distinguished.

2. ——:——: BUILDING SEWER: INJUNCTION. An injunction restraining the building of a sewer will not excuse the failure of the contractor to complete the work within the contract time where such injunction does not have the effect to illegalize the work. Contracts of common carriers distinguished.

*This case only reached the reporter November 26, 1898.

3. ——: ——: ——: CONTINGENCY AS TO DELAY: TAX BILLS.
A contract for building a sewer referred to 'the ordinance and plans
and specifications as a part thereof on file with the board of works
which specifications provided for delays. *Held,* delay occasioned by
an injunction came within the provision and the tax bills issued for
the greatly delayed work were valid.

*Appeal from the Jackson Circuit Court.*—HON. JOHN W.
HENRY, Judge.

REVERSED AND REMANDED (*with directions*).

R. H. HAMILTON and PEAK & BALL for appellant.

(1) Where performance of a contract is rendered
temporarily unlawful, by reason of an injunction, it
is merely suspended, and after the removal of the re-
straint, is still binding and valid, and this without any
provision in the contract expressly covering such a con-
tingency. Hadley v. Clarke, 8 D. & E. T. R. 259;
Odlin v. Ins. Co., 2 Wash. C. C. 312; Semmes v. Ins.
Co., 30 Wall. 158; 2 Parsons on Contracts, p. 127; Ins.
Co. v. Hillard, 37 N. J. Law, 444; Bayes v. Fettyplace,
7 Mass. 325; 2 Chitty on Contracts [11 Ed.], 1079;
Hamilton v. Ins. Co., 9 Blatchf. 234; Ins. Co. v.
Duerson, 28 Grat. (Va.) 630; Scraython v. Ins.
Co., 45 Miss. 581; Williams v. Pounds, 48 Tex.
141; 2 High on Injunctions [3 Ed.], 1133; Wake-
field v. Brown, 38 Minn. 361. (2) It was com-
petent for the city to provide as it did, by interlining
stipulation fifteen, in the contract, that any interrup-
tion of the work by injunction was not intended to be
included within the one hundred and eighty days
allowed for the completion of the work. Fanning v.
Schamel, 68 Cal. 428; Dougherty v. Coffin, 69 Cal.
454. (3) The fixing of the time for the completion of
the work was not, under the charter, an essential pro-
vision of the original ordinance as in a paving case.

Charter, art. IX, sec. 10. (4) The extension or altera-
tion of the time originally fixed in the ordinance or in
a contract, being a matter within the legislative au-
thority of the council, their action in that regard can
not be judicially held void.

JOHN MUCKLE and S. S. WINN for respondent.

(1) The sewers were not built within the time
specified in the ordinance, which renders the tax bills
void. The contract was confirmed June 24, 1893. The
one hundred and eighty days' time for completion of
work expired January 21, 1894, and the work was not
completed until November 10, 1894, making four
hundred and seventy three days from date of confirma-
tion of contract. McQuiddy v. Brannock, 70 Mo. App.
535. (2) The primary cause of the failure of the con-
tractors to complete the work in the allotted time was
the illegal attempt on the part of the city to cause the
sewers to be built without providing an outlet for them,
which would have created a public nuisance instead of a
public benefit. By agreeing that the injunction should
remain in force until the outlet sewer was built from
Cleveland Avenue to the Blue River, it was in effect
conceded and admitted that the injunction was right-
fully issued, and that the city was not in a position to
cause the sewer to be built when the ordinance was
passed and contract let and that they were therefore
both void.

ELLISON, J.—This action is on two special tax bills
issued to a contractor for building a sewer in Kansas
City and by the contractor assigned to plaintiff. The
time limited in the ordinance and contract for the com-
pletion of the sewer was one hundred and eighty days.
The time taken by the contractor was more than three

times that period.   Plaintiff seeks to avoid the failure to perform within the time, by showing that an injunction was issued, at the suit of some third party, against the prosecution of the work.   Defendant contends that the ordinance was absolute as to the time and that the contract made no provision against the contingency of an injunction.   We will discuss the case first from that standpoint.   The circuit court held the case covered by the decision of this court in McQuiddy v. Brannock, 70 Mo. App. 535, and declared the bills void.

Plaintiff's contention is that our holding that an injunction was no excuse for failure to perform unless provided against in the contract, is not sound and he asks that we recede from it.   He recognizes the proposition that an absolute undertaking requires CONTRACT: performance: act of third person: law. absolute performance, but contends that performance is excused when prevented by law.   He also recognizes the correctness of our holding in that case that the city engineer could not extend the time specified in the ordinance and contracted for by the parties to the contract.

The proposition was stated long ago, in Paradine v. Jane, Aleyn, 27: When the law creates a duty and the party is disabled to perform it, without any default in him, and he has no remedy over the law will excuse him.   *But* when the party by *his own contract,* creates a charge or duty upon himself, he is bound to make it good, if he may, notwithstanding any accident, by inevitable necessity, *because he might have provided against it by his contract.*   This rule of law has not been departed from.   It has been repeatedly recognized and applied in this state.   Davis v. Smith, 15 Mo. 467; Harrison v. Railway, 74 Mo. 364.   It is stated in different words by Chitty on Contracts, 1074, and quoted by the supreme court of Minnesota in Anderson v. May, 50 Minn. 280, as follows:   "Where the contract

is to do a thing which is possible in itself, or where it is conditioned on any event which happens, the promisor will be liable for a breach thereof, notwithstanding it was beyond his power to perform it; for it was his own fault to run the risk of undertaking to perform an impossibility, when he might have provided against it by his contract. And therefore, in such cases, the performance is not excused by the occurrence of an inevitable accident, or other contingency, although it was not foreseen, by or within the control of, the party. An application of this rule is furnished by Cowley v. Davidson, 13 Minn. (Gil. 86) 92. What is sometimes called an 'exception to the rule' is where the contract is implied to be made on the assumed continued existence of a particular person or thing, and the person or thing ceases to exist, as, where it is for personal service, and the person dies, or it is for repairs upon a particular ship or building, and the ship or building is destroyed."

So strict is this rule and so firmly grounded is it in our jurisprudence, that even the act of God will be no excuse for nonperformance. In School District v. Dauchy, 25 Conn. 530, it was urged that where the thing contracted to be done becomes impossible by the act of God, the contract is discharged. But the court said: "This is altogether a mistake. The cases show no such exception, though there is some semblance of it in a single case which we will mention. The act of God will excuse the not doing of a thing where the law had created the duty, but never where it is created by the positive and absolute contract of the party. The reason of this distinction is obvious. The law never creates or imposes upon any one a duty to perform what God forbids or what He renders impossible of performance, but it allows people to enter into contracts as they please, provided they do not violate the law."

And our supreme court has repeatedly held the same. Collier v. Swinney, 16 Mo. 484; Taylor v. Steamboat, 20 Mo. 261; Davis v. Smith, 15 Mo. 467. For the much greater reason, of course, the act of man, a third person, will not excuse performance: "If the condition of an obligation be to deliver a certain thing to the obligee, bought by him of the obligor, it is not any discharge that a stranger recovered it from him after." Vin. Abr., tit. Condition, K. C. 1. "If a condition be to do a thing, and a stranger interrupts him, that does not excuse the performance." Comy. Dig., tit. Condition L. 14.

There is, however, a recognized qualification to the rule, which is that if the thing to be done becomes unlawful, performance is excused. So in School Dist. v. Dauchy, *supra*, it is said: "We believe the law is well settled, that if a person promises absolutely, without exception or qualification, that a certain thing shall be done by a given time, or that a certain event shall take place, and that the thing to be done or the event is neither impossible nor unlawful, at the time of the promise, he is bound by his promise, unless the performance, before that time, becomes unlawful."

We have, therefore, to inquire whether the injunction made the prosecution of the work unlawful. In other words, was placing the injunction at the suit of a third party the act of the law within the meaning of the rule, or the act of a third party. If the former, performance of the contract within the stipulated time was excused. If the latter, it was not excused. It is not pretended that the building of sewers became unlawful. If the act of building the sewer in question became unlawful it was not from any change of the law, it was on account of some local defect or imperfection attaching to this particular work, which should have

been known to the contractor, and which gave some third party, who may have considered himself aggrieved by the work, an opportunity to sue out an injunction. The fact that the tax bills were issued and are in plaintiff's hands shows that the injunction was not for the purpose, or at least had not the effect to illegalize the work. It was a mere preventing the work at the time covered by the injunction. The performance of the work did not become unlawful in the sense of the rule under discussion. The injunction operated on the time for doing the work, but not on the question of the legality of the sewer. It stayed the work, but did not make it illegal.

It seems to me that the rule as to statutory limitation of actions is serviceable here by analogy. By law, an action must be brought within a given time. Here, by contract, work was to be performed in a certain time. Now an injunction, in the absence of a statute, such as we have (R. S. 1889, sec. 6787) does not arrest the running of the statute of limitations. It is held that the party against whom the statute is running should protect himself by having the court make some provision therefor in the writ, or by some separate appeal to equity. 2 Wood on Limitations, 583; Barker v. Millard, 16 Wend. 572; Robertson v. Alford, 21 Miss. 509; Ingraham v. Regan, 23 Miss. 213; Rice v. Lowan, 2 Bibb. (Ky.) 149. It seems, therefore, logically, to follow that an injunction will not arrest a contractual limitation. And so it was distinctly held in Wilkinson v. Ins. Co., 72 N. Y. 499, affirming 9 Hun. 522. In that case there was a provision in the policy of insurance that an action must be brought thereon within twelve months after the loss. It was not brought in that time and the plaintiff sought to excuse himself by showing that an injunction sued out by a third party had prevented him.

The court said: "The provision fixing the time within which an action must be brought is distinct, definite and unqualified." And, "The plaintiff to succeed in this case must maintain the proposition that an injunction issued at the suit of a third person against one of the parties to a contract, restraining him from bringing an action thereon within the time limited thereby, is an act of the law which dispenses with the condition, excuses the delay and prevents a forfeiture." Further on, the court said: "In this case the Cambridge Valley Bank (which sued out the injunction) stood as a stranger to the defendant, and the injunction was not, within the cases, an act of the law which deprived the company of the benefit of the limitation in the contract." Again, the court said, "It is difficult to perceive on what principle a party shall be deprived of the benefit of the statute of limitations, where he has not in any manner contributed to the delay, and we have found no modern case supporting such a jurisdiction."

The rule in reference to the contracts of common carriers is no answer to our views on this question. A common carrier is excused from the performance of his contract when a process of law has, without his fault or connivance, prevented a compliance. As if the goods were taken from him by atttachment, or replevin, sued out by a third party. But a common carrier, when acting as such, is a bailee, who is compelled to receive the goods of those offering them for transportation. It is a duty imposed upon him by law, and as such his performance is excused by the act of God, or the process of the courts. His service is compulsory, and it would be altogether unreasonable to hold him as if he were an ordinary individual making a voluntary, specific contract. If, however, such carrier should contract unconditionally, in advance of the bailment, to

transport property at a future time, the special rule governing carriers will not apply to him, and the act of God will not excuse him from performance.  Collier v. Swinney, 16 Mo. 484.

The authorities relied upon by plaintiff are rendered inapplicable to the case by the foregoing views. They refer to cases where the contract became unlawful, such as by act of congress, or a state of war. Williams v. Pounds, 48 Tex. 141, was where the party claiming the limitation sued out the injuction, thus taking advantage of his own act.  This, of course, he could not do.  The same may be said of Wakefield v. Brown, 38 Minn. 361.  There the defendant in the execution procured the court to stay it, and then afterwards wanted the time of the stay which he procured to count as part of the limitation.  There are instances where the law prescribes a limitation in general terms, and in another statute will disable a party from suit for a certain period, as by prohibiting suits against administrator until a certain period after the death of the intestate.  In such cases the two statutes will be construed together to give effect to each.  But instances like those have no application here.

From the foregoing it will be seen that we have discovered no reason justifying a departure from McQuiddy v. Brannock.

(2)  It will, however, scarcely be denied that the parties to the contract may so far make it conditional as to provide that if the contingency happen, of delay in the time agreed, such period shall not be counted as a part of the time.  In this case, as we interpret the contract, they have so agreed.  The ordinance providing for the work refers to plans and specifications, as a part thereof, on file in the board of public works.  This may be done. Galbreath v. Newton, 30 Mo. App. 380.  The contract

for the work was that it should be done according to the ordinance, plans and specifications. In the specifications it is provided: "During a suspension of the work, from any cause, the work shall be suitably covered, so as to preserve it from injury by the weather or other cause; if the engineer so directs, the trenches shall be filled and surplus earth removed. The contractor shall not be entitled to any damages on account of a suspension of the work, but shall be entitled to additional time for the completion of his contract, equal to the delay caused by any such suspension."

These provisions are general and cover any unavoidable suspension of the work and, hence, embrace the enforced suspension by the injunction. Bidding was invited, bids were made and the contract let, in view of this provision. In this respect the case is wholly unlike McQuiddy v. Brannock, *supra*. We may remark here that defendant claims the bill of exceptions does not correctly set forth the case made, in this particular, in the trial court; but we must accept the record as we find it.

It is not claimed that the tax bills issued for the work against the property involved are not for a proper amount, and we see no merit in defendant's point, made in this court, that the bills are void because issued in two instead of one bill.

The result is that we will reverse the judgment and remand the cause, with directions to enter judgment for plaintiff. GILL, J., concurs. SMITH, P. J., not sitting.