Williams v. Stifel.

---

---

JAMES S. WILLIAMS, Appellant, v. OTTO F. STIFEL, Respondent.

St. Louis Court of Appeals, December 10, 1895.

Memorandum of Part of Contract: COMPETENCY OF ORAL EVIDENCE. When a memorandum in writing of a contract purports to express only a part of the contract, but to be complete as to those parts which are referred to in it, oral evidence is not competent to vary its terms.

*Appeal from the St. Louis City Circuit Court.*—HON. JAMES E. WITHROW, Judge.

REVERSED AND REMANDED.

*Chester H. Krum* for appellant.

The court erred in admitting the deposition of Elmore. It sought to vary the terms of a written contract, and that part of it which was addressed to this object was necessarily incompetent. *Rollins v. Claybrook*, 22 Mo. 405; *O'Neill v. Crain*, 67 Mo. 250; *Chrisman v. Hodges*, 75 Mo. 413; *Broughton v. Null*, 56 Mo. App. 231; *State ex rel. v. Hoshaw*, 98 Mo. 358; *Ringre v. Holtzclaw*, 112 Mo. 519; *Storck v. Mesker*, 55 Mo. App. 26; *Hagar v. Hagar*, 71 Mo. 610; *Koehring v. Mereminghoff*, 61 Mo. 403; *Pearson v. Carson*, 69 Mo. 550. The portion of the deposition which undertook to show a custom among "race horse men," was likewise incompetent. *Miller v. Dunlap*, 22 Mo. App. 97. Upon the whole case, even with the deposition of Elmore in, the court should have found for the appellant. The letter of July 15, 1893, from the appellant,

advised the respondent of the terms of the sale which had been agreed on. With that notice before him, he drew the paper sued on. It must be held, that whatever Elmore may have considered the agreement, the respondent, himself, imposed his own terms, fixed his liability himself, and, in so doing, said nothing about a winning while the horse was in his own hands. The entire antecedent oral agreement was merged in the written contract. *Hagar v. Hagar*, 71 Mo. 610; *New Lindell Hotel v. Bailey*, 3 Mo. App. 598; *Turner v. Railroad*, 20 Mo. App. 632; *Conn v. McCullough*, 14 Mo. App. 584; *Railroad v. Cleary*, 77 Mo. 634.

*Hough & Hough* for respondent.

The language of a written contract should be given such a reasonable interpretation, as will give effect to the intention of the parties as gathered from the writing itself. *Redheffer v. Leathe*, 15 Mo. App. 12; *St. Louis Gaslight Co. v. City of St. Louis*, 46 Mo. 128; *Wilson v. Marlow*, 66 Ill. 385; *Michael v. Ins. Co.*, 17 Mo. App. 23. In seeking for the intention of the parties as evidenced by the words used in a contract, the fact that a construction contended for would make the contract unreasonable may properly be taken into consideration. *Hanna v. South St. Joe Land Co.*, 126 Mo. 1; *McManus v. Shoe and Clothing Co.*, 60 Mo. App. 218; *Russell v. Allerton*, 108 N. Y. 288; *Town of Royalton v. Turnpike Co.*, 14 Vermont, 311. Where express words in a contract fairly and legitimately require an inference as to their intention, the intention thus inferred is just as truly a part of the contract as the clearly expressed undertaking. *Grimley v. Davidson*, 24 Ill. App. 31; *Bickford v. Cooper & Co.*, 41 Pa. St. 142. While parol evidence will not be received to contradict or vary a written agreement, still if part only of the con-

tract be put in writing, the matter left out may be supplied by parol evidence. *Life Ass'n v. Cravens*, 60 Mo. 389; *State ex rel. v. Hoshaw*, 98 Mo. 358; *Black River Lumber Co. v. Warner*, 93 Mo. 378. Where a contract is obscurely expressed, a knowledge of its subject-matter and the relation of the parties becomes important, and parol evidence as to the same is admissible to aid in its interpretation. The contract may be understood in the light of the circumstances under which it was made. *Black River Lumber Co. v. Warner, supra; Bunce v. Beck*, 43 Mo. 266; *Broughton v. Null*, 56 Mo. App. 231; *Hanna v. South St. Joe Land Co.*, 126 Mo. 1; *Davis v. Rankin*, 59 Mo. App. 449.

BIGGS, J.—This is an action to recover $1,000. The claim arises out of the sale of a race horse. At the time of the sale the following memorandum of its terms was signed by the defendant and delivered to plaintiff's agent, to wit:

"July 18, 1893.

"Agreement between J. S. Williams, of Paris, Texas, and Otto F. Stifel, of St. Louis, Missouri, a part contract of sale of Pop Gray to Otto F. Stifel. Said Otto F. Stifel hereby agrees to pay, aside of his two promissory notes of $2,500 each, the sum of one thousand dollars ($1,000) to said J. S. Williams immediately after Pop Gray's first victory in a race.

(Signed)                    "OTTO F. STIFEL."

"I hereby guarantee the fulfillment of above obligation of said Otto F. Stifel in regard to the amount of one thousand dollars to be paid to Williams in case of a victory of a race as above stated.

(Signed)                    "BEN ALTHEIMER."

It was alleged in the petition that subsequently the horse won a race, and that the defendant had refused to pay the $1,000.

In the answer the execution of the instrument was admitted, but the defendant's contention, as shown by the answer, was that under a reasonable interpretation of the writing his liability to pay the $1,000 depended upon the winning of a race while the horse remained his property, which did not occur. It was also averred that the memorandum was a part only of the agreement, that the agreement as made rested in parol and was to the effect that plaintiff would sell the horse for $5,000 certain and $1,000 payable if defendant won a race with him; that the $5,000 were to be paid in two equal installments due at specified times, for which notes were to be executed; that the horse should be taken by defendant's trainer (in whom plaintiff had great confidence) to some eastern race track, and there prepared for and put into a race, and plaintiff notified; that such disposition was made of the horse and he was entered in three races, in all of which he failed to win, and of all of which the plaintiff had notice, and that defendant subsequently sold the horse without having won a race with him. The case was submitted to the court sitting as a jury, and the finding and judgment were for the defendant. No instructions were asked or given.

The plaintiff introduced evidence tending to prove that Pop Gray was sold by the defendant in October, 1893, and that, in November following, the horse won a race in Chicago, and that the defendant refused, after demand, to pay the additional $1,000. Against the objections of the plaintiff the defendant was permitted to introduce evidence as to the terms of the oral agreement as made between plaintiff and the defendant's agent concerning the purchase of the horse. The testimony of the agent was to the effect, that the negotiations took place in Chicago during the defendant's absence; that the final agreement was as stated

in the defendant's answer; that the defendant fully complied with its terms by taking the horse east and entering him in three races, in all of which he was beaten; that afterward, with the knowledge and under the advice of the plaintiff, the defendant sold the horse, together with his other race stock, at public auction, and permanently retired from the racing business. It was further disclosed by the evidence that, after the terms of sale had been agreed on, the plaintiff addressed a letter to the defendant, which was delivered to him in St. Louis by plaintiff's agent. The letter reads:

"CHICAGO, July 15, 1893.

"*Dear Sir:*—In accordance with your instructions or notification to me, that Lou Elmore was your agent and attorney in fact in the matter of business pertaining to race-horses, and that whatever I did with him you would make good, etc., I sold him Pop Gray for six thousand dollars, as follows: $2,500 payable October 1st at Farmers and Merchants Bank, Paris, Texas; $2,500 payable October 15th after date at Farmers and Merchants Bank, Paris, Texas, both to bear legal rate of interest; and one thousand dollars payable and due on the day of the first time he, Pop Gray, wins.

"Mr. Frank James will go with you to St. Louis, and you are to give me such security as Major C. C. Rainwater and C. H. Pearson, of St. Louis, will say is good, and turn said notes over to said Mr. James. I think you have the grandest two-year-old, barring Domino, in the Union, and I trust you may do well with him.                    Yours truly,

"J. S. WILLIAMS.

"To Mr. Otto F. Stifel, Chicago, Ills."

Upon the receipt of this letter, and without further information of the terms of sale so far as the record shows, the defendant wrote and signed the memorandum sued on. The evidence in rebuttal tended to

contradict the testimony of defendant's agent, that it was expressly agreed that the $1,000 was not to be paid unless the horse won a race for the defendant, but the plaintiff's witness, who professed to have been present when the sale was finally agreed on, admitted that it was a part of the agreement that the defendant's trainer should take the horse east and there prepare and enter him in races, of which the plaintiff was to be notified.

Was parol evidence admissible for the purpose of supplying the alleged omissions in the contract? The argument in support of this is that the writing purports on its face to be only a memorandum or a partial statement of the terms of the contract, and that under well established rules the evidence introduced was admissible. The trouble with the argument is that the premise is wrong. The writing does state that it is "a part contract" of sale, and in respect of the notes this is true, but concerning the payment of the $1,000 it is not true. That clause is complete, and is plainly to the effect that $1,000 of the purchase money was to become due and payable whenever Pop Gray won a race. The only effect of the defendant's evidence was to make that portion of the purchase money payable upon other conditions, which unquestionably varied the contract. Under all of the authorities this could not be done.

The evidence, if admissible under any circumstances, could only have been received upon proper allegations of mistake for which a reformation of the contract was sought. As before stated, the defendant was not advised, except by plaintiff's letter, of the terms of the purchase. The terms expressed in the agreement coincide with the letter, but the plaintiff might inadvertently have omitted from the latter the condition which the defendant insists on. If that was

found to be the fact, a cause of mutual mistake might be established which would entitle the defendant to a reformation of the contract.

For the reasons stated, the judgment of the circuit court will be reversed and the cause remanded. All the judges concur.