HOWARD BOGGS, Appellant, v. THE PACIFIC STEAM LAUNDRY COMPANY, Respondent.

St. Louis Court of Appeals, January 2, 1901.

1. **Contract, Oral: STATUTE OF FRAUDS.** An oral contract for employment during the life of employee at a stipulated wage, is not by its terms one required to be in writing under the provisions of the statute of frauds, that all contracts not to be performed within one year shall be expressed in writing.

2. ———: ———: ———. In the case at bar, the contract does not belong to the class which are required by law to be embodied in writing.

3. ———: ———: ———: **BREACH OF CONTRACT.** Hence, if validly entered into, although resting entirely in parol, it may well sustain a recovery for its breach.

4. ———: ———: **CONTRACT, WRITTEN: ORAL TESTIMONY: EVIDENCE OF OMITTED STIPULATIONS.** The rule that a completed written contract is the final repository of all prior or contemporaneous agreements of the parties of a verbal or oral nature, does not, except when the law imperatively demands the contract to be in writing (as under the statute of frauds), forbid evidence of omitted oral stipulations consistent with those expressed in an incomplete written contract, nor evidence of a subsequent oral contract resting upon sufficient consideration, which either modifies, substitutes, or extinguishes the previous written contract of the parties.

5. **Practice, Trial:** PRACTICE, APPELLATE: OBJECTIONS: MOTION FOR NEW TRIAL: EVIDENCE: INSTRUCTION TO "RULE OUT." Rulings on evidence or other matters of exception, to be reviewable on appeal, must have been excepted to when announced, and are not saved by mere subsequent attacks, by instruction or in the motion for new trial.

Appeal from St. Louis City Circuit Court..—*Hon. Horatio D. Wood,* Judge.

CERTIFIED TO SUPREME COURT.

*J. F. Merryman* for appellant.

(1) An oral contract to employ a man for life is not void by reason of the statute of frauds. The man may die the next day and hence the contract may be performed within a year. The contract made with Boggs, in the case at bar, was as good and as valid and as legal a contract as it would have been had it been drafted by all the lawyers of the land and reduced to writing and executed in the presence of the most august court in the nation. A few Missouri decisions on this point will suffice: Foster v. McO'Blenis & Matthews, 18 Mo. 88. (2) A verbal agreement not thereafter to run carriages on a particular route is not void by the statute of frauds, as a contract not to be performed within one year from the making thereof. The statute does not apply to contracts which *may* be performed within one year. (3) "It is true that the contract could not be wholly performed within one year, but it was entirely and completely executed by one of the contracting parties, and it is the established doctrine of this court and the settled law of this State that where an agreement, not in writing, has been wholly performed on one side, the other party thereto can not interpose the defense of the statute of frauds. Blanton v. Knox, 3 Mo. 342.

*R. E. Rombauer* for respondent.

It can not be shown that an instrument was delivered on a different contractual consideration than the one on which it purports to have been made. This cardinal rule has been applied in this State in many cases, where an attempt to make this showing was made. (a) In suits on promissory notes: Smith's Admr. v. Thomas, 29 Mo. 310; Jones v. Shaw, 67 Mo. 669; Chrisman v. Hodges, 75 Mo. 415; National Bank v. Hunt, 25 Mo. App. 175. (b) In suit upon a guaranty: Squire v. Evans, 127 Mo. 519. (c) In sale of lands: Ringer v. Holzclaw, 112 Mo. 523. (d) Touching an assignment of judgment: State ex rel v. Hoshaw, 98 Mo. 360. (e) On a subscription paper: James v. Clough, 25 Mo. App. 147. (f) In a memorandum of sale of personal property: Williams v. Stifel, 64 Mo. App. 143; Remington Sewing Machine Co. v. Cushem, 7 Mo. App. 538; Schickle v. Chouteau Iron Co., 10 Mo. App. 241. (g) In a memorandum of lease: Pearson v. Carson, 60 Mo. 552; Tracy v. Union Iron Works, 104 Mo. 198.

BOND, J.—The petition in this case recites that the plaintiff lost his arm from the use of machinery while in the service of defendant; that five days thereafter the following agreement was entered into by plaintiff and the defendant, to-wit:

"Whereas, Howard Boggs of the city of St. Louis, while in the employment of the Pacific Steam Laundry, a corporation of the State of Missouri, did at the laundry of said company, No. 515 Elm street in said city, on the eighth day of December, 1888, lose his hand and a part of his arm by his careless and negligent use of a wringer, of which he had full charge and control; and, whereas, said Boggs does by these presents confess his negligence aforesaid, and that said accident was due entirely to his own fault, and not in any degree

to the fault of said company, or of its machinery, or other servants; now, in consideration of the premises, and of the agreement of Said Howard Boggs, hereinafter set forth, and his former faithfulness in the discharge of the duties committed to him, the said company does hereby agree to pay said Boggs his wages for a period of two months, notwithstanding his incapacity to work, that is, the sum of $10 per week for two months from and after the eighth day of December, aforesaid, and thereafter to give him employment suitable to his condition for such time and at such wages as may be agreeable to said company; it being distinctly understood by said Boggs that the above understanding with said company does not involve a confession of any liability whatever of said company to him on account of the accident aforesaid, which accident is hereby confessed to have been due to his own carelessness, and to nothing else. - It is further understood that nothing herein shall be construed to require said company to retain said Boggs in its employment longer than it may please them to so retain him from and after the expiration of the two months aforesaid.

"And the said Howard Boggs, in consideration of the premises and of the promise of said company, does hereby release said company from any further claim or demand, whether of right or not, against said company on account of the accident and injuries aforesaid, or of any injuries resulting therefrom, and freely and voluntarily confesses that said accident was due to his own carelessness, and in no degree or manner whatsoever to the negligence or default of said company.

"In witness whereof the parties aforesaid have hereunto set their hands and seals this thirteenth day of December, 1888.

(Signed)     "Howard Boggs (his mark).   (Seal)

     "Pacific Steam Laundry Co. (Seal)

· The undersigned witness that the foregoing agreement was freely and voluntarily signed by Howard Boggs and said company, and that said Boggs was able to sign the same and

to understand the contents.thereof, which were read to him.
(Signed)            "C. B. Wickes,
                    "Mrs. Eliza B. Lewis,
                    "Henry Griffin."

The petition alleges that plaintiff retained possession of said agreement until the ninth day of April, 1889, when he delivered it to the defendant upon an oral agreement then made between plaintiff and defendant, which, and the breach thereof, the petition alleges in the following terms, to-wit: "That defendant would pay plaintiff the sum of two hundred dollars and as an additional consideration, would agree to give plaintiff employment for life at the rate of ten dollars per week, providing he would deliver up the aforesaid release to them, and enter into their employment for life, and not bring any suit for the damages he had sustained by reason of his injury while in their employ on the eighth day of December, 1888.

"Plaintiff states that he accepted the proposition made by the defendant, through Wickes, its agent and superintendent, and acting within the scope of his authority, as aforesaid, and that thereupon defendant, by Wickes, its agent aforesaid, paid him two hundred ($200) dollars, and on said ninth day of April, 1889, plaintiff entered the service of defendant under the terms of the contract made by the defendant through Wickes, its agent and superintendent, acting within the scope of his authority, as aforesaid, and that in all things he faithfully complied with the terms of said contract on his part under the direction of the superintendent and general manager of defendant; and plaintiff further states that on said ninth day of April, 1889, he was assigned by said Wickes, agent and superintendent as aforesaid, to the duties as a washer in defendant's said employ, and continued in such capacity for about two years thereafter, when defendant, acting through its manager and general superintendent changed the duties of said plaintiff from washer to that of night watchman, and that he

continued in the latter capacity, always faithfully complying with the terms of the contract on his part, until on or about the seventh day of August, 1897, when he was wrongfully discharged by defendant, and since said time defendant has refused to give him any employment whatever or pay him the sum of $10 per week or any part of said sum."

The prayer of the petition was for judgment for the amount which should be due on the day of trial calculated at the rate of $10 per week from the time of plaintiff's discharge, less any sum plaintiff might be able to earn in the interim.

The answer admitted the employment of the plaintiff from April, 1889, until August, 1897, which it alleged was under the written agreement recited in plaintiff's petition and not otherwise, and denied the other allegations of the petition.

On the trial, plaintiff gave evidence which tended to prove the making by defendant of the oral contract as set forth in the petition. To the testimony of the plaintiff detailing such evidence, both in his examination in chief and in his cross-examination, no objection was interposed by counsel for defendant. After the re-examination of the plaintiff and following an offer in evidence by his counsel of some entries on the file cover of the petition, counsel for defendant moved the court that all the evidence given by plaintiff of his oral contract with the representative of defendant "be now ruled out," stating that the objection could not be made earlier on account of vagueness in the testimony of the witness as to the date and sameness of the contract recited in the petition with the one delivered to defendant when the contract sued upon was made. The record shows that this motion and one of similar import, made after the examination of plaintiff's wife, were considered by the court, and by the court overruled. We have not been able to find in the record that counsel for defendant interposed any exception at the time or subse-

quently to this adverse ruling of the court, other than his complaint in the motion for new trial of the admission of incompetent evidence, and the failure to withdraw the same from the jury by refusing an instruction to that effect. The evidence tended to show that at the time of the alleged formation of the oral agreement between plaintiff and defendant, to-wit, April, 1889, defendant paid plaintiff $200 in cash and subsequently employed him at the rate of $10 per week, and discharged him without cause in August, 1897. There was a verdict for plaintiff in the sum of $625, and the award by the court of a new trial, on the ground of error in refusing two instructions requested by defendant, the first being a demurrer to the evidence, and the second being, to-wit:

"The court instructs the jury that the law will now permit a person to show by oral evidence that a written contract was delivered upon a different contractual consideration from the one upon which it purports to have been made: That the consideration recited in the contract bearing date December 13, 1888, and offered in evidence are contractual and the plaintiff can not show, orally, a different consideration or a different employment of him by the defendant than the one shown in said contract."

Plaintiff duly excepted to the award of a new trial, and appealed therefrom to this court.

1. The oral contract for employment during his life at a stipulated wage, set forth in plaintiff's petition, and for breach of which this action is brought, is not by its terms one required to be in writing under the provisions of the statute of frauds that, all contracts not to be performed within one year shall be expressed in writing, for according to the terms of the alleged oral contract it would have been performed in one year if the plaintiff had died within that period after its formation, and it is only to contracts, the time of whose performance must extend beyond one year

from their date, that the statute applies. Harrington v. K. C. Cable Railway Company, 60 Mo. App. 223; Winters v. Cherry, 78 Mo. 344. The contract in question, therefore, does not belong to the class which are required by law to be embodied in a writing, hence if validly entered into, although resting entirely in parol, it may well sustain a recovery for its breach. It follows that the validity of the oral contract, made as shown by the record, is the controlling question presented by the appeal from the order of the court setting aside the verdict recovered for its breach. To support this ruling counsel for respondent invokes the familiar principle, that a completed written contract is the final repository of all prior or contemporaneous contractual agreements of the parties of a verbal or oral nature, whether relating to its consideration, or any other essential element of the written agreement. Jackson v. Railway, 54 Mo. App. 644, and cases cited. Of course this rule does not, except in cases where the law imperatively demands the contract to be in writing (as under the statute of frauds), forbid evidence of omitted oral stipulations consistent with those expressed in an incomplete written contract, nor evidence of a subsequent oral contract resting upon a sufficient consideration, which either modifies, substitutes or extinguishes the previous written contract of the parties. Ringer v. Holtzclaw, 112 Mo. l. c. 523; Weil v. Willard, 55 Mo. App. l. c. 378. The facts in this case take it out of the application of the rule relied upon to support the action of the trial court for two reasons: First, the contractual colloquy between the parties evidencing the time, the consideration, nature and circumstances of the oral agreement was testified to in the whole and all of its component parts by plaintiff during his examination in chief and cross-examination, without any objection interposed at the time to the questions and answers eliciting the elements of the oral agreement. The motion to "rule out" this oral

testimony subsequently made by respondent was not timely under this state of the record; but even if it had been seasonable, respondent waived the benefit thereof by not also excepting at the time to the adverse ruling of the court on his motion to "rule out" the oral testimony. It follows that the trial judge was justified in the refusal of the instruction, supra, even if the evidence referred to therein had been open to timely objection, and his action in so doing would have been necessarily affirmed on appeal under the settled rule, that rulings on evidence or other matters of exception, to be reviewable on appeal, must have been excepted to when announced, and are not saved by mere subsequent attacks, by instruction or in the motion for new trial. Maxwell v. Railway, 85 Mo. l. c. 96; State v. Hope, 100 Mo. l. c. 353; Hickman v. Green, 123 Mo. l. c. 172; Ecton v. Railway, 56 Mo. App. 337; Crabtree v. Vanhoosier, 53 Mo. App. 405; Smith v. Dunklin County, 83 Mo. l. c. 196; Griffith v. Hanks, 91 Mo. 116; Bray v. Kremp, 113 Mo. 552; Pearson v. Gillett, 55 Mo. App. 312. Secondly, the oral evidence in question was clearly competent, for under the facts in this record it was not obnoxious to the rule that none of the contractual elements contained in a completed written contract can be altered, varied or contradicted by a contemporaneous or prior oral agreement. The written contract between the parties was made by defendant and plaintiff under their respective seals on the thirteenth day of December, 1888. When thus completed it was delivered to plaintiff. In substance it recited the injury sustained by plaintiff, and his confession three times repeated, that it was caused *by his own carelessness and nothing else;* his former faithfulness in the discharge of the duties committed to him; his release of further claim against the defendant, and, in consideration of all which, defendant's promise to pay plaintiff absolutely $10 per week for a period of two months following the injury,

and thereafter to give him employment for such time and such wages *as may be agreeable to said company,* with a further proviso that plaintiff might be dismissed from employment after the lapse of said two months, if defendant saw fit. Judged *e visceribis* it is too plain for discussion that the above contract was in all respects complete and enforcible after it had been delivered to plaintiff, who was the promisee of the money obligated to be paid thereunder. Now, the oral evidence of plaintiff tended to prove that this contract subsisting in his favor was subsequently taken to defendant and surrendered to it upon a new oral agreement then entered into, several months after the execution of the written contract, to-wit, April, 1889; that by the terms of the new agreement plaintiff was to deliver up the previous written contract, and agree further that he would not *sue* the defendant for the injuries which he has suffered in its employ, in consideration whereof defendant agreed to pay plaintiff $200 in cash, and employ him for his life at the fixed rate of $10 per week. The evidence tended to show that plaintiff carried out the new agreement on his part, and that defendant paid plaintiff in cash ($200) stipulated for, and thereafter paid him $10 per week for his services, until August, 1897, when he was discharged in contravention of the new agreement. According to these stipulations it was the plain purpose of the parties to substitute a new oral agreement between themselves for a previous written agreement. They had a clear legal right to do this, provided the new agreement was subsequently formed and supported by a sufficient consideration. Lancaster v. Elliot, 55 Mo. App. l. c. 255. The above evidence tends to show the truth of both of these hypotheses, for it shows that the new oral agreement was made several months after the written agreement had been executed and delivered to plaintiff, who was the party to be benefited thereby, and that plain-

Vol 86 app—40

tiff yielded for the new agreement, first, his promise not to sue defendant, which he had not heretofore given; second, the surrender of the former written contract itself into the hands of the defendant, who in exchange for these considerations agreed to pay a stated sum in cash to plaintiff, and to employ him for a *definite* time thereafter at a *fixed* rate of wages, which it (defendant) was not obligated to do under the former written contract. These considerations were amply sufficient to support the mutual undertakings assumed by the parties in the new contract entered into by them as a substitute for their former written engagement. It is evident from this consideration of the contents of the record that the doctrine invoked in the instruction can not be stretched to fit the evidence actually adduced and its legal import, without snapping asunder, in the attempt, the legal principle upon which it is based.

The ruling of the trial court in refusing the two instructions proffered by respondent was correct. Its subsequent award of a new trial on account of that ruling was manifestly erroneous, and as it is not shown that the new trial was properly granted for other reasons set forth in the motion therefor, the order granting the same is reversed and the cause remanded, with directions to enter judgment on the verdict in plaintiff's favor.

Judge *Bland* concurs; Judge *Biggs* dissents.

### DISSENTING OPINION.

BIGGS, J.—1. The vice in the majority opinion is the erroneous assumption that the written contract was a valid and subsisting obligation from the date of its execution, to-wit, December 13, 1888, whereas, the uncontradicted testimony of the plaintiff is that the contract was retained by him and was not regarded by him as binding until the ninth or tenth of

April, 1889, when he delivered it to the defendant's manager as an executed agreement. It was on the last mentioned day and prior to the delivery of the contract, that the plaintiff testified that the manager of the defendant, in consideration of the promises made by plaintiff in the writing, agreed to employ plaintiff during his life at a stipulated salary, instead of on the terms stated in the written agreement. The following contracts from the cross-examination of plaintiff put these statements of mine beyond dispute, to-wit:

"Q. Now, you say you read this paper; now, after having identified the paper, state how you got this paper in your possession, and when? A. ˙ When I went up to the office, up to the laundry.

"Q. What time was that? A. That was in 1889, the ninth or tenth of April.

"Q. Yes; now in the interim, between April 9 and December 13, when you signed this paper, you say it was in your possession, or the possession of your wife wasn't it? A. That paper was signed at the hospital.

"Q. Very well? A. It was signed there somewhere about the same time, or for four or five days after I went back home, on the eighth of April.

"Q. It bears date the thirtieth of December? A. About eight or ten days afterward.

"Q. Five days afterward? A. Something like that, or ten days after; it was not a great while, it was signed and left there for my wife.

"Q. You signed it at the hospital? A. Yes, sir.

"Q. Now, it was either in your possession or the possession of your wife between the thirteenth day of December, 1888, and the eighth or ninth day of April, 1889, is that it? A. Yes, sir.

"Q. And then you went, you say, and saw Mr. Wickes in 1889, and had this paper with you? A. Yes, sir.

"Q. You had this paper with you at that time? A. Yes, sir.

"Q. So I understand you claim your statement is, this paper was never delivered to the company until it was delivered to Mr. Wickes in April, 1889. A. I brought that paper there.

"Q. You brought that paper with you at that time? A. Yes, sir; I brought the paper there.

"Q. Did you ever make any different written contract with this corporation except this? A. Not that I know of.

"Q. Then whatever contract you made with the corporation was made with Mr. Wickes orally before you delivered this paper; was that it? A. Yes, sir; when I delivered the paper.

"Q. When you delivered the paper? A. When I delivered the paper I went to work.

"Q. I mean by the word of mouth; you say there was no written paper between you except this paper? A. No, that is all.

"Q. Whatever transpired prior to the time of your signing this paper and its delivery was by word of mouth, by conversation between yourself and Mr. Wickes, is that it? A. Yes, sir.

"Q. Very well, now when you came there, as you state, on the ninth of April, 1889, what did you say to Mr. Wickes? A. When I came in I walked up and says, 'Good morning, Mr. Wickes.' He spoke; I don't know which one spoke first; anyhow he spoke as a man would here. I says to him, at least here is the conversation as near as I can get at it. He says, 'I am glad you come down to go to work; well, just think of it, there is not much for you to do; you will be able to go to work,' says he. 'If you ever sue the company you will never make anything; you better take my word and take the contract I am offering you;' says he. 'I represent the

company; I know what I am doing; I am doing what is for your good,' says he.. 'You take the contract I am giving you now,' says he, 'and have that job for life, as long as this company lasts, as long as this laundry lasts; if you sue the company,' he says, 'you would not make anything.' I don't know whether I would or not. I didn't sue the company. I took him at his word. I says, 'I will go to work then.' So I went to work, pulled my coat off. and went to work, gave him that paper there and took the money he gave me. The contract was made then, too, with him for the work.

"Q. Let us understand that. Do I understand you to say that this contract between yourself and Mr. Wickes, and you claim it to be, was made prior to the delivery of this paper to Mr. Wickes? A. Afterwards.

"Q. After the delivery? A. No, it was when I delivered the paper just there.

"Q. What do you mean when you delivered the paper? A. I mean there and then, when I laid the paper down, and meant that I would go to work; I went to work; and he had made the contract with me for this job, and he represented the company.

"Q. Very well, that is exactly what I want to get at, Mr. Boggs; you have testified now to the conversation; you had this paper in your pocket did you? A. Yes, sir; I had it.

"Q. Then you said you had it in your pocket and you came there to see Mr. Wickes?

"Q. You concluded to go to work; Mr. Wickes told you it was a wise thing to do because you could get nothing by suing the company; what did you say then, and what did he say, and what did you say to him; I want to know what your statement of the contract is? A. He asked me, says he, whether I was able to work around the laundry, right there,

and help that man on the laundry, and will go to work on the machine right there.

"Q. What was it Mr. Wickes said to you that he would do; did he state what your contract says, what it means, rather? A. When me and him was there he paid me the money when I put that paper down.

"Q. When you put that paper down? A. Yes, sir."

The Court: "Q. Did he say that before you handed him the paper, that they would give you a job for life, or that he would give you a job for life? A. He told me when I came down.

"Q. He told you when you came down? A. Yes, sir; he told me that more than once.

"Q. Was that before you turned the paper over to him? A. Yes, sir.

Judge Rombauer: "Q. Was it before you turned the paper over to him? A. Yes, sir; if he hadn't made that contract with me then, I wouldn't have turned the paper over to him and took the money.

"Q. If he wouldn't have made the contract, you wouldn't have turned that paper over to him? A. No, sir; and I wouldn't have taken the money either."

This evidence entirely uproots the theory upon which the majority opinion rests, i. e., that there was a valid and completed contract on December 13, 1888, and that subsequently, to-wit, on April 10, 1889, the parties, for a consideration, agreed to modify it, by which plaintiff was to be given employment during his natural life. Putting aside this untenable or unwarranted view, it is plain that the circuit court committed error in admitting oral evidence that the written contract was delivered on a different contractual consideration than the one upon which it purports to have been made. This cardinal principle is announced in many decisions. I cite only a few of them. Jackson v. Railroad, 54 Mo. App. 644; James

v. Clough, 25 Mo. App. 147; Williams v. Stifel, 64 Mo. App. 143; Pearson v. Carson, 69 Mo. 552; Smith's Admrs. v. Thomas, 29 Mo. 310. The principle is succintly stated by Judge ELLISON in Jackson v. Railroad, supra, as follows: "Whenever the statement of the consideration leaves the field of mere recital and enters into that of contract, as shown by the intention of the parties to be gathered from the instrument, it is no longer open to consideration." In the trial and submission of the case at bar this rule of evidence was violated to the manifest prejudice of defendant and in its final disposition my associates have refused to recognize and apply it, but have disposed of the case in the very teeth of the evidence and the decisions.

2. It is decided by my associates that as the defendant failed to object to the introduction of the oral evidence at the time it was offered, and failed to except to the subsequent refusal of the court to withdraw it from the jury, the defendant must be considered as having waived the objection, and therefore the circuit court committed error in granting a new trial on the ground of its erroneous admission. This is the first time in the history of the jurisprudence of this State that a trial court has been put in the wrong for correcting a manifestly prejudicial error committed at the trial. The complaining party may, by his conduct, be precluded from insisting on the error (which is not the case here), but it is the law everywhere that a trial court of general jurisdiction has the inherent power, while still possessed of the cause, to grant a new trial on its own motion, when it believes a prejudicial error has been committed, and the appellate court will not interfere with such discretion, unless it has been abused. N. Y. Life Insurance Company v. Goodrich, 74 Mo. App. 355; Suddarth v. Empire Lime Company, 79 Mo. App. 585. Wherefore, it is immaterial that the defendant here made no objection at the time the incompetent evidence was

