MERIWETHER, etc., Respondent, v. QUINCY, OMAHA & KANSAS CITY RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, January 21, 1908.

1. PARTNERSHIP: Death of Partner: Right of Surviving Partner to Sue. In an action brought by a partnership where one of the partners died pending the action, the surviving partner could go on with the cause without taking out letters of administration or giving bond as surviving partner, in the absence of any showing that the administrator of the individual estate qualified as administrator of the partnership estate.

2. COMMON CARRIERS: Contract to Furnish Cars: Evidence. In an action by a shipper against a railroad company for damages caused by the failure of the company to furnish cars for the shipment of the plaintiff's hogs in accordance with an agreement to furnish such cars at a given date, the evidence is examined and held sufficient to warrant a finding that such a contract was entered into.

3. ————: Agency: Powers of Station Agent. Where a station agent of a railroad company has the usual powers of such agency, among which is the power to receive freight for shipment, a shipper has a right to act upon the presumption that such agent has authority to agree to furnish cars on given dates, in the absence of any knowledge to the contrary.

4. ———: ———: ———: **Bill of Lading.** Where a station agent agreed with a shipper to furnish cars for the shipment of the plaintiff's hogs at a given date, this agreement and the right of the agent to make it were not affected by a bill of lading subsequently issued to the shipper containing a provision that the agent was "not authorized to agree to forward live stock to be delivered at a specified time," nor was such a clause notice to the shipper that the agent was without authority to agree to furnish cars at specified dates.

5. ———: **Bill of Lading: Restricting Liability.** A proviso in a bill of lading issued by a railroad company that the company would not agree to deliver the stock covered by the bill of lading at destination at any specified time, nor for any particular market, did not release the company from liability for delays which might be avoided by care and diligence.

6. ———: ———: ———: **Powers of Station Agent: Notice.** A bill of lading issued by a railroad company to a shipper for the carriage of live stock, which stated that the agents of the company were not authorized to agree to forward live stock to be delivered at a specified time, was notice to the shipper that the station agent had no authority to make a verbal contract that his stock would be shipped to destination on a specified date.

7. ———: ———: ———: ———: **As to Furnishing Cars.** Where a station agent agreed with a shipper that cars would be furnished for the shipment of the shipper's hogs at a given date and the cars were not furnished until after that date, this agreement was not affected by bills of lading subsequently issued providing the terms of the contract of shipment; the damage for violation of the verbal contract had accrued in favor of the shipper before the written contract was entered into.

8. ———: ———: ———: ———: **As to Date of Shipment.** But a verbal contract made by the agent that the stock of the shipper would be shipped to destination at a given time, was merged into the written contract or bill of lading which fixed the terms of the shipment; the contract of shipment was not reached until after the bill of lading was issued.

9. ———: **Duty of Furnishing Cars: Contract to Furnish Cars.** While a railroad company is not bound to be ready to furnish cars for unprecedented and unforeseeable increase of traffic. nevertheless if it agrees to furnish cars to a shipper at a given date, it must perform the agreement or answer in damages even if the agreement is impossible of performance.

10. ———: **Loss of Freight: Notice of Claim: Failure to Furnish Cars.** A proviso in a bill of lading that a claim for damages,

resulting from a breach of its conditions by the carrier, should be presented in ten days after the unloading of the freight, would not apply to a prior contract made to furnish cars at a given date.

11. ——: ——: ——. But where live stock was damaged by delay in transportation, such a proviso in the bill of lading required the shipper to comply with it before he could recover for the loss or show some good reason why the notice was not given.

12. **EVIDENCE: Refreshing Memory: Documents.** A witness who possesses no knowledge of the facts about which he testifies can not read or refresh his memory from documents which he had nothing to do with making, and the correctness of which he has no knowledge.

13. ——: ——: ——. But an experienced dealer in live stock who is familiar with the price of stock at a given date, might refresh his memory by reading live stock journals in which the prices at such time were quoted.

Appeal from Knox Circuit Court.—*Hon Chas. D. Stewart*, Judge.

REVERSED AND REMANDED.

*O. D. Jones, Jas. G. Trimble* and *Willard P. Hall* for appellant.

(1)   All previous agreements and negotiations between plaintiffs and defendant in relation to the transportation of the hogs in suit were merged in the written contracts for the transportation of said hogs executed in duplicate by plaintiffs and defendant.   And therefore (1) the trial court erred in refusing to give the instructions asked by defendant in the nature of demurrers to the evidence; (2) and said court erred in giving plaintiffs' instructions in effect directing the jury to find for plaintiffs if they found that plaintiffs had made certain oral contracts with defendant for the transportation of said hogs; (3) and said court erred in excluding said written contracts from the evidence.   Leonard v. Railroad, 54 Mo. App. 293; Bishop

on Contracts, secs. 68, 768; O'Bryan v. Kinney, 74 Mo. 125; 6 Cyc. of Law and Prac., 405, 407, 420, 421. (2) Under the terms of the written contracts it was necessary for plaintiffs before they could recover for any loss or damage to the hogs to make a claim in writing to defendant within ten days from the time said hogs were removed from the cars. There was no pretense even by plaintiffs that they ever made such claim. The making of such claim was a condition precedent to the right of plaintiffs to recover. (1) In the absence of such claim the trial court should have instructed the jury to find for defendant. (2) The trial court erred in giving plaintiffs' instruction because they ignored said condition precedent. Smith v. Railroad, 112 Mo. App. 610. (3) Defendant's agent, Alexander, had no authority to make the contracts alleged in the petition, and plaintiff, Meriwether, knew of such lack of authority. (4) Plaintiff Meriwether had no personal knowledge of the market at the National Stock Yards; he had no personal knowledge of the weight there of the hogs in suit, or of the price for which they were sold. He only knew what the stock journal reported as to the market, and the weight and price of the hogs from the reports of sales made by the consignees. He was not competent to testify to what was thus shown. Fountain v. Railroad, 114 Mo. App. 676. (5) The court erred in permitting plaintiffs' witness, Hanna, over defendant's objections to testify to certain facts, not of his own knowledge, but as shown by the live stock journal, by a copy of the unloading certificate, a record kept by the stock yards company, and by the books of Brown, Fry & Company, which were kept by others. Wolff v. Matthews, 39 Mo. App. 372; Ritchie v. Kinney, 46 Mo. 298; Boyle v. Hardy, 28 Mo. 390; Wilcoxson v. Darr, 139 Mo. 673. (6) The said copies were not used for the purpose of refreshing the witness' memory, he had no independent recollection after reading

them, he had no part in keeping said books, and therefore, they were not admissible on that score.    8 Ency. of Pl. and Pr., 134, 142.

*Balthrope & Smith* for respondent.

(1)    The court properly excluded from the jury, the after executed written and printed contracts, offered in evidence by the defendant as evidenced by its exhibits 1 and 2, even if it be conceded that such contracts as a general proposition would be binding.    Because plaintiff's damages had then and were accruing under his original verbal contracts with the defendant and there are no clauses of waiver in said written and printed contracts offered by defendant, and for the same reason the court properly sustained plaintiffs' motion to strike out all that part of defendant's amended answer relating to said after written and printed contracts of shipment.    Harrison v. Railroad, 74 Mo. 373; Miller v. Railroad, 62 Mo. App. 252; McCullough v. Railroad, 34 Mo. App. 23; Gann v. Railroad, 72 Mo. App. 34.    (2)    It is the contention of the defendant, that because Alexander as it claims, had no positive authority from the defendant company to make such verbal contracts as alleged in the petition, defendant is not bound.    This contention would be right if plaintiff had been informed and knew of such limited powers of Alexander as defendant's agent,  but the evidence conclusive shows that plaintiff was not informed of want of authority on part of Alexander to make such verbal contracts.    Aull v. Railroad, 66 Mo. App. 388. (3)    As to the contention of the defendant that there was no revival of this cause in the circuit court after the death of Hunolt.    We have sent to the clerk of this court with this brief three attested copies of such revival as shown by the records of the trial court, and we now call the attention of the court to this record. But in this case it was not necessary to have revived

this cause after the death of Hunolt.   Matey v. Gregg
Co., 19 Mo. App. 107; Bredow v. Mutual Savings In-
stitution, 28 Mo. 186; Lattmer v. Newman, 67 Mo. App.
76.

GOODE, J.—Joseph W. Meriwether is the surviv-
ing partner of the firm of Meriwether & Hunolt, which
was originally composed of plaintiff and Joseph Hu-
nolt, who was living at the time this action was insti-
tuted and was joined as coplaintiff with Meriwether;
but having died during the progress of the cause, it
was continued in the name of Meriwether as the sur-
viving member of the firm.   Three distinct causes of
action are declared on in as many counts or paragraphs
of the petition; each cause of action being based on a
separate contract alleged to have been entered into
by the firm of Meriwether & Hunolt, with defendant's
station agent at Edina, Missouri.   The facts of the
first two counts are so similar as to call for the appli-
cation of the same rules of law and the counts may
be considered together; but the case stated in the third
count rests on dissimilar facts.   The purpose of the
first two counts is to recover damages for alleged
breaches of two contracts made by said firm in its
own behalf with said station agent in behalf of the
railroad company.   According to the first count the
agent, on December 14, 1903, agreed, in consideration
of said firm delivering a carload of hogs for shipment
over defendant's line, to furnish a stock car at Edina,
on the morning of December 16th, early enough to be
loaded with hogs on said day, for carriage to the Na-
tional Stock Yards at East St. Louis, and further agreed
to ship the hogs immediately over defendant's railroad
and connecting lines so they would arrive at destina-
tion in time to be sold on the market of December 17th.
It is alleged that said station agent, whose name was
Thornton Alexander, had full power, as agent of the

railway company, to make said contract in its behalf; that pursuant to the contract so entered into with the agent, Meriwether & Hunolt, the original plaintiffs in the suit, delivered the hogs, on the morning of December 16th, in defendant's pens at Edina, early enough to have been loaded into the car and shipped on said morning and so as to arrive at the stock yards in East St. Louis before the close of the market of December 17th and the opening of the market of the following day; on either of which markets the hogs would have sold at $4.60 a hundredweight. The gross weight of the hogs is stated and the loss to the firm by reason of the lower price and for feeding while the hogs were in the stock yards; the total damages being laid at $98.23, for which judgment is prayed. The second count is similar to the first one, but avers a contract made with the station agent, December 15, 1903, to furnish Meriwether & Hunolt a car for the shipment of seventy-three hogs on the morning of December 17th, so the car might be loaded on said morning, hauled over defendant's railroad and connecting lines, and arrive at the National Stock Yards for the market of December 18th; that defendant "neglected and failed to furnish" the car as agreed and did not furnish it until the evening of December 18th, and in consequence of the delay, the hogs did not reach East St. Louis until after the close of the market of Saturday evening, December 19th, and could not be marketed until the following Monday, December 21st. Damages to the amount of $88.31 were demanded on this count. The third count alleges a contract similar to the foregoing to furnish a car on the morning of January 25, 1904, to be loaded with hogs and shipped immediately on the same day, so as to arrive at the National Stock Yards on the morning of January 26th for the market of the latter day. This count does not allege failure to furnish a car as agreed, or loss from depreciation in the price of hogs

between the day when, by the contract, they ought to have reached the market and the day they did reach it, but alleges instead that a car was furnished and loaded on said stipulated morning.     The breach declared on is a failure by defendant promptly to ship and deliver the hogs to the consignees at the stock yards on the morning of January 26th.     The allegation of breach is that defendant "neglected and failed promptly to ship said carload of hogs over said railroad and connecting lines, and neglected and failed to deliver said hogs to plaintiffs' said consignees on said 26th day of January, 1904, and did not so deliver the same until on the afternoon of the 27th day."     It is further said the officers and servants of defendant negligently and carelessly permitted the car "to become sidetracked, detached and detained for a long time, whereby plaintiffs' said hogs were unreasonably detained in said car in transit," and were not watered or fed or properly cared for, in consequence of which there was an undue shrinkage in the weight of the hogs, one was killed and one badly crippled.     The amount of the damages laid in this count was $229.29.     One answer was filed to all the counts, all the allegations of each were denied, and specific denials were made which we need not quote further than to say that the contracts alleged in the petition to have been made with defendant's agent at Edina, Alexander, were repudiated on the ground he was without authority to make them.     It is denied, too, that he did make them, or that the damages demanded were suffered by Meriwether & Hunolt.     It is further stated in the answer that Meriwether & Hunolt were familiar with defendant's method of transacting business, aware the station agent had no authority to enter into the contracts pleaded, and aware, also, that the conversations alleged to have resulted in these verbal contracts between the agent and the firm regarding the furnishing of cars, were merely preliminary ne-

gotiations looking to a bill of lading to be signed by the parties, which would settle the terms on which the hogs were to be carried by defendant; that on December 18th, the contract for the first two cars was closed by a single bill of lading, which was attached to the answer as Exhibit A, and wherein defendant agreed to transport said hogs from Edina to East St. Louis. One of the terms of the written contract is that in case of any loss or damage to the animals while in transit, or in the possession of the company, it should not be liable unless a claim was made in writing by the shippers to the general freight agent of defendant, or its agent at Edina, or its agent at the point of destination, within ten days from the date the animals were removed from the car. No written claim was made in ten days. It is further alleged that on the 14th and 15th days of December, 1903, when the two cars were requested by Meriwether & Hunolt, there was an unusual demand for cars for the transportation of hogs, which demand had continued for several days prior to the dates mentioned, and in consequence thereof the cars of defendant were off its line and in use carrying stock to various markets, and could not be collected in time to furnish two cars on the dates designated in the request; that it was not possible for defendant to procure cars from other railroad companies at said time; that defendant owns sufficient stock cars to transport and move all stock ordinarily offered to it, and the failure to get the cars to Meriwether & Hunolt as soon as they were needed, was on account of the unprecedented demand for stock cars; that cars were procured and furnished as soon as possible after the requests were made. As to the third count of the petition, the answer denies the contract therein alleged was made with Meriwether & Hunolt, and avers instead a written contract under date of January 25, 1904, for the transportation of a carload of hogs on this date, which contract

or bill of lading is attached to the answer as Exhibit B. On motion of plaintiff the portion of the answer pleading a defense based on failure to give ten days' written notice after the removal of the hogs from the car of a claim for damages, was stricken out, as was the portion pleading a defense on account of the unusual demand for stock cars in December, 1903, rendering it impossible for defendant to furnish cars to plaintiff on the very dates requested. An exception was saved to striking out those portions of the answer. At the conclusion of all the evidence defendant requested instructions denying plaintiff any recovery on either count of the petition and saved an exception to the refusal of the court to grant those instructions. For the plaintiff the court gave two instructions based on the first and second counts of the petition, which told the jury, in substance, that if the station agent, Alexander, agreed for and in behalf of the railroad company to furnish cars for two shipments of hogs on the 16th and 17th days of December, and Meriwether & Hunolt *had no knowledge of the want of authority in Alexander to make said agreement for defendant* (our italics) but, relying on said agreement, delivered their hogs in defendant's pens at Edina on the morning when the cars were to be furnished, and defendant failed to furnish the cars as agreed, and did not ship the cars over its railroad and connecting lines on the dates agreed, plaintiff was entitled to recover such damages as the jury believed from the evidence had been sustained from the depreciation of the market for hogs, "on account of the same not being delivered in time to have been placed on the market, caused by the unreasonable delay in the shipment of the same." The instruction given on the third count of the petition advised the jury, in substance, that if they believed Alexander agreed in behalf of the defendant that "the defendant would promptly ship and deliver the same (i. e., the carload of hogs)

to plaintiff's consignee at the National Stock Yards in
St. Clair county, Illinois," and further believed plain-
tiff had the hogs ready for shipment and defendant
failed to ship them, and by reason of the failure Meri-
wether & Hunolt were damaged, then the plaintiff was
entitled to recover such damages as were sustained by
reason of the failure of the defendant promptly to ship
and deliver the hogs.    We have not quoted the instruc-
tions fully, but only so much of them as concerns the
points of law involved on the appeal.

Complaint is made of the reception of certain tes-
timony, on the ground that it was hearsay.    Plaintiff
Meriwether was permitted to state the date the hogs
reached East St. Louis, though he only knew it from
the accounts of sales returned by the consignees, Brown,
Fry & Co.    He was permitted to state, too, by read-
ing from the Stock Market Journal for St. Clair county,
Illinois, under the dates of December 17th and 18th,
and January 27th, the market price of hogs in East St.
Louis, on those dates.    The testimony of C. M. Hanna,
who was connected with the firm of Brown, Fry & Co.,
was taken by deposition.    This deposition was intro-
duced in evidence at the trial and portions of it were
objected to by the defendant.    Hanna's duty was to
sell hogs received by Brown, Fry & Co., on consign-
ment.    He was permitted to testify the dates of the
arrival of the different carloads of hogs in suit, though
he had no knowledge or any personal remembrance of
the matter and could only state the dates from entries
in the firm's books and papers.    He was also permitted
to testify his opinion of the loss sustained on account
of the depreciation of the market between the dates when
they ought to have been delivered and the dates when
they were, though he said the only way he could arrive
at any conclusion on the question was from the Na-
tional Live Stock Reporter, and by comparing its quo-

128 App.—42

tations from one day to another.    It was not shown how the quotations of this newspaper were compiled, or that they were accurately kept.    Other testimony of the same nature was received from this witness over the objection of the defendant.    He stated the items of expense incurred in keeping the hogs over Sunday, the times of their arrival and the amounts they sold for—all from entries made by the bookkeeper of his firm and the accounts of sales; though he testified he remembered nothing about these matters and had no knowledge of them except from documents consulted while he was testifying.    During the progress of the trial plaintiff Meriwether spoke of the death of Hunolt after the action was instituted, and thereupon counsel for the railroad company objected to the introduction of further evidence for the reason that the cause had not been properly revived; and this objection having been overruled, an exception was saved.    Under the instructions of the court a verdict was given for plaintiff on all the counts of the petition, and judgment having been entered accordingly, this appeal was prosecuted.

1.    Although Hunolt died during the pendency of the action, it was competent for Meriwether to continue the cause in his own name as the surviving member of the firm; and he enjoyed this right without qualifying as administrator of the partnership estate.    If he omitted for thirty days to take out letters of administration and give bond, the administrator of Hunolt could have displaced him by qualifying as administrator of the partnership estate; but there is no testimony either that Meriwether did not qualify under the statute or that the administrator of Hunolt's estate did. Nor was it necessary for Meriwether, in order to go on with the cause, to show he had taken out letters and given bond as surviving partner.    Independent of this statutory mode of administering the partnership

assets, he had a common law right as surviving partner to hold title to said assets and collect them; but subject to be defeated as stated. [Crook v. Tull, 111 Mo. 283, 20 S. W. 8; Easton v. Courtwright, 84 Mo. 27; Bredow v. Sav. Inst., 28 Mo. 181; Hargadine v. Gibbons, 114 Mo. 561, 21 S. W. 726; Goodson v. Goodson, 140 Mo. 206, 41 S. W. 737.] It not having been shown Hunolt's administrator had qualified, it is to be presumed Meriwether's right and authority as surviving partner continued intact. The precise point was decided against defendant's position in Crook v. Tull and Hargadine & Gibbons, supra. See, too, as to the presumption: Cargile v. Wood, 63 Mo. 501; Diel v. Stegner, 56 Mo. App. 35; McGuire v. Nugent, 103 Mo. 161, 15 S. W. 551; McCullough v. Ins. Co., 113 Mo. 606, 21 S. W. 207.

2. It is contended for the defendant there was no evidence tending to prove the agent at Edina entered into the several verbal contracts declared on in the petition; but we overrule this contention, because, though there was a conflict between the testimony of Meriwether and Alexander on the issues, the former testified Alexander did agree to furnish, for the several shipments of hogs, a car on December 16th, another on December 17th and another on January 25th, in time to be loaded and started to destination on the mornings of those days and arrive for the market in East St. Louis on the succeeding days. Meriwether swore he told Alexander on December 14th, he wanted a car for a shipment of hogs on the 16th, when the hogs would be at Edina for loading, and Alexander said he (Meriwether) could get the car on the morning of the 16th. The hogs were delivered in the pens at Edina on the 16th, but the car did not come until the 18th. Meriwether said he requested a car on December 15th for the morning of December 17th and Alexander told him he could have the car on the latter day, but it did not arrive until the 18th, when the two carloads of hogs

were shipped in the same train.    Regarding the car
ordered for January 25th, Meriwether swore Alexan-
der agreed to furnish a car on said day and did furnish
one, the complaint being, as already stated, that after
the hogs were loaded, they were not promptly moved
and delivered to the consignee at East St. Louis on
January 26th.

3.    The second contention against the validity of
the alleged verbal agreements involves two propositions,
the first being that Meriwether knew Alexander had no
authority to agree to furnish cars on any given date, or
any power whatever to enter into a contract for cars;
and that the extent of his power was to take an order
for a car and submit the order to his superior officer,
and that no contracts were made to furnish cars un-
less by authority of said superior.    Meriwether swore
positively he had no knowledge of any such limitation
of Alexander's authority, and unquestionably, as the
latter was the station agent of the company at Edina,
he appeared to be clothed with the usual powers of
such an agent, one of which is to receive freight for car-
riage by the railway company he serves.    Incidental
to this power, would be the power to agree about the
shipments, and, among other things, to agree to fur-
nish cars.    [1 Hutchinson, Carriers (M. & D. Ed.),
sec. 462; Railroad v. Racer, 10 Ind. App. 503.]    Meri-
wether had the right to act on the supposition that
Alexander possessed authority to agree to furnish cars
on given dates, in the absence of knowledge to the con-
trary, not only because agreements of this kind are
according to the customary mode of transacting rail-
way business and fall within the apparent powers of
an agent by virtue of his authority to receive freight
for shipment, but because the evidence shows the pre-
vious course of business between defendant and Meri-
wether & Hunolt recognized such contracts as valid
when made by Alexander.    [Pruett v. Railroad, 62 Mo.

527; Harrison v. Railroad, 74 Mo. 364; Miller v. Railroad, 62 Mo. App. 252, 262; Gann v. Railroad, 72 Mo. App. 34.] But it is said the written bills of lading issued for the three shipments in dispute, and which were similar to those issued to Meriwether & Hunolt for prior shipments, showed on their faces the station agent had no power to make the verbal contracts on which plaintiff relies. The clause of the bills of lading invoked in this connection recites that the agents of the company were "not authorized· to agree to forward live stock to be delivered at a specified time, nor for any particular market." Obviously this clause was no limitation of the power of an agent to agree to furnish cars and receive freight for shipment on a particular date; but was simply a limitation of his authority to agree to forward a carload of live stock so as to reach destination on a given date or in time for a particular market. The defendant's bills of lading contained another similar clause; "The company does not agree to deliver the stock at destination at any specified time, nor for any particular market." The clause first mentioned was no notice to Meriwether & Hunolt that Alexander was without authority to agree to furnish cars and ship the hogs on the specified dates, but both clauses were intended to protect the railroad company from such a construction of its contracts of affreightment as would bind it absolutely to deliver freight at destination by a given date, regardless of the fact that unavoidable obstacles might prevent this from being done. In other words, the clauses were meant to preserve the company's immunity from liability for unavoidable delay. [Hutchinson, Carriers, sec. 653.] But the fact that freight was delivered for carriage pursuant to a bill of lading containing such a proviso did not excuse the company from its duty to carry the freight through in a reasonable time, or re-

lease it from liability for delays which might be avoided by care and diligence.

Though what we have said is true, it is also true that the first clause of the bill of lading issued January 25th was notice to Meriwether that Alexander had no power to bind the company absolutely to deliver the third carload of stock at the stock yards on January 26th, which is the stipulation declared on in the third count of the petition and a breach of it alleged.    We remark that if the cause is to be retried, the petition ought to be amended so as to allege authority, real or apparent, in Alexander to contract.    As it now stands it alleges he had actual authority, whereas the instructions given at plaintiff's request assume that he was without authority, but Meriwether & Hunolt were ignorant of the fact.

4.    Counsel for defendant insist if the verbal contracts were made as alleged, they became merged in or superseded by the written contracts contained in the several bills of lading which were afterwards executed. In dealing with this theory, the first two contracts, as intimated above, stand on a different footing from the third.    Each of the contracts to furnish cars for shipments of hogs on the mornings of December 16th and 17th, was broken and a cause of action had accrued on each in favor of the shippers prior to the execution of the respective bills of lading, which did not undertake to release the damages that might have been caused by the breaches, or contain any term inconsistent with an intention on the part of Meriwether & Hunolt to demand damages.    But the contract to furnish a car and start a shipment of hogs on the morning of January 25th, was complied with, and the wrongs complained of in the third count of the petition accrued after the bill of lading had been executed and during the transportation of the hogs from Edina to East St. Louis.    The gravamen of this count is that, through

the negligence of defendant's agents and officers, the transportation of the carload of hogs was unreasonably delayed by sidetracking and detaching the car, and therefore the hogs did not reach the market at East St. Louis in due time. Defendant's liability for these delinquencies is controlled by the terms of the written contract and does not depend at all on a previous verbal agreement. The third count of the petition avers Alexander agreed his company would ship the hogs immediately and deliver the same to Brown, Fry & Co. at the National Stock Yards on the morning of January 26th. But before the hogs were shipped the parties entered into a written contract fixing the terms of their agreement regarding the shipment and what the terms were must be determined from this writing, that is to say, from the bill of lading. It is stated in a standard text work, that if a verbal agreement is made between a shipper and a carrier to furnish cars at a certain time and this agreement is breached by the carrier, the shipper does not, by subsequently sending his goods forward in a car furnished by the carrier and taking a bill of lading, preclude himself from recovering damages for the breach. His redress for the breach remains unless he agrees, for a sufficient consideration, to waive it. But in the same connection it is stated that if a bill of lading is executed while the oral contract is unbreached and still executory, the latter is merged in the bill of lading. This rule has been followed by our appellate tribunals. [McCullough v. Railroad, 34 Mo. App. 23; Miller v. Railroad, 62 Mo. App. 252; Gann v. Railroad, 72 Mo. App. 34; Hoover v. Railroad, 113 Mo. App. 688, 88 S. W. 769; Harrison v. Railroad, 74 Mo. 364; Hutchinson, Carriers, sec. 174.] And again it is said in Hutchinson, that if the shipper and carrier enter into an oral contract for a shipment of goods, but before the contract is executed the shipper accepts from the carrier, with knowledge of its contents,

a bill of lading containing provisions at variance with the verbal contract, the ordinary rule that a bill of lading is the sole evidence of the final agreement of the parties will prevail.    [Sec. 171.]    This rule, too, has been declared by our courts.    [O'Bryan v. Kinney, 74 Mo. 125; Leonard v. Railroad, 54 Mo. App. 293.]    The two rules consist well with the principles of the law of contracts.    Anterior verbal negotiations and agreements, are taken to be superseded by or merged in a later written agreement relating to the same subject-matter and purporting to settle all the terms the parties have agreed upon.    [Munford v. Wilson, 15 Mo. 504; Hagar v. Hagar, 71 Mo. 616; Boggs v. Laundry Co., 86 Mo. App. 616.]    But if a prior verbal agreement has reached completion and is broken by one party to the other's loss, it cannot be held, in reason, that a contract in writing made later, about the same subject-matter, is intended to operate as a release of damages for the breach of the first agreement.

5.    No error was committed in striking out those portions of the answer which set up the defense of the impossibility of furnishing cars on the dates the agent agreed they should be furnished.    Though a railway company may be bound to keep on hand cars enough to accommodate ordinary traffic, or such accessions of business as may be anticipated, and is not bound to be ready for a wholly unprecedented and unforeseeable increase of traffic (Pruett v. Railroad, 62 Mo. 527) this rule has nothing to do with defendant's liability in the present action.    If it was unable to furnish cars, it should not have agreed to do so.    Having entered into contracts to furnish them on certain dates—contracts made by its agent within the apparent scope of his authority—it cannot be heard to excuse itself by saying it was impossible to comply.    When a party agrees to perform a certain stipulation by a given date, without exception or qualification, he must answer in dam-

ages for failure to perform, notwithstanding performance was out of his power. [Cotter v. Swinney, 16 Mo. 484; Harrison v. Railroad, 74 Mo. 364; Dawson v. Railroad, 79 Mo. 296, 300; Myres v. Diamond Jo. Line, 52 Mo. App. 199; Miller v. Railroad, 62 Mo. App. 252.] Hence, it is no defense to the action based on failure to have the cars for the first two shipments as agreed, that defendant's cars were in use elsewhere in consequence of traffic being unusually heavy. To the third cause of action this alleged defense is irrelevant because the car was furnished, and the damages sustained by the shippers resulted from delays in transit.

6. The failure to prefer in ten days from the unloading of the hogs, a written claim for damages resulting from breaches of the first two contracts, affords no defense. This notice was stipulated for in the bills of lading which, as we have stated, are not the contracts in suit. Those two causes of action are founded on verbal agreements which did not stipulate a claim for damages. But as the contract for the third shipment is contained in the bill of lading, and as the third count seeks damages for injuries to the hogs and not for a decline in their market value occurring during the delay in transit, a written demand in the agreed time was requisite, unless there is some good reason why the demand was not preferred. [Freeman v. Railroad, 118 Mo. App. 526, 531, 93 S. W. 302, and citations; Bellows v. Railroad, 118 Mo. App. 500, 94 S. W. 557; Leonard v. Railroad, 54 Mo. App. 293.] Hence we hold the court erred in striking out the part of the answer which pleaded the defense of failure to ask damages in writing in ten days after the hogs were removed from the car.

7. Some of the testimony of Meriwether and Hanna was hearsay and consisted of reading from documents. It appears from their own evidence that they never had possessed any knowledge of some of the facts

to which they testified, so that their memory could be revived or refreshed by the writings they used. Neither did they know at the time these entries or writings were made that they stated the facts correctly and, in truth, they had nothing to do with the making of them. [1 Wigmore, Ev., sec. 735 to 764, incl. and sec. 437; 1 Wharton, Ev. (3 Ed.), sec. 516, 520; Greenleaf, Ev. (Lewis Ed.), secs. 437, et seq.; Hill v. State, 17 Wis. 675; Lowell v. Wentworth, 39 Ohio St. 614.] As to Meriwether's reading quotations from a live stock journal, we state that, if, as an experienced dealer in live stock he was familiar with the price of hogs at the National Stock Yards on the days in question, the fact that he refreshed his memory by reading the journal, or in part derived his knowledge from it, would not render his testimony incompetent. [Fountain v. Railroad, 114 Mo. App. 676, 682, 90 S. W. 395.] But he could not get the paper before the jury as original evidence by reading it; at least without prior proof that it was accurate.

The judgment is reversed and the cause remanded. All concur.