NEIL J. HOUSDEN and DOROTHY M. HOUSDEN, HUSBAND AND WIFE, PLAINTIFFS-APPELLANTS, v. CECIL V. BERNS AND DORIS BERNS, D/B/A S. AND B. TRAILER SALES, DEFENDANTS-RESPONDENTS.—273 S. W. (2) 794.

Springfield Court of Appeals. December 9, 1954.

*Turner White, Chinn & White,* for Appellant.

*Fred A. Moon,* Attorney for Respondents.

McDOWELL, P. J.—This appeal is from a judgment rendered in the Circuit Court of Greene County, Missouri, for defendants on

1166

plaintiffs' petition seeking a rescission of contract of sale and asking that the parties be placed in statu quo on the ground of mutual mistake.

The cause was tried upon plaintiffs' first amended petition. It alleges that defendants were engaged in operating an automobile sales business in Greene County; that on or about November 1, 1952, plaintiffs bought from defendants a Streamlite House Trailer for the sum of $4,074.90; that defendants allowed plaintiffs a credit of $1,335.00 for their 1947 Elcar House Trailer and the balance of the purchase price was paid by two promissory notes, one for $80.00 on which plaintiffs have paid $25.00 and a deferred payment note for $3,805.20, on which plaintiffs have paid $181.20.

The petition states that at the time of the purchase, defendants represented the Streamlite Trailer to be a 1953 model, new and in sound condition; that these representations were false and untrue; that the trailer was in fact a 1952 model, not new and not in sound condition; that plaintiffs and defendants were mutually mistaken as to the year model and condition of the trailer so purchased and that plaintiffs would not have purchased said trailer had they known the true state of facts.

It alleges that plaintiffs, upon the discovery that the trailer was a 1952 model and not in sound condition as represented, tendered back to defendants the trailer bought and demanded the return of the consideration paid. The prayer was for a judgment declaring the sales contract void and ordering defendants to restore to plaintiffs their 1947 Elcar Trailer, or the value thereof, $1,335.00, and that defendants deliver up for cancellation plaintiffs' promissory notes together with the return of the cash payments made.

The answer amounted to a general denial.

Plaintiffs rely upon two allegations of error.

1. The court erred in refusing to consider plaintiffs' exhibit 2 as direct evidence of the year model of the Streamlite Trailer, and,

2. That the court erred in holding plaintiffs have failed to prove a prima facie case, since proof of misrepresentation of year model is sufficient to warrant recission.

The judgment of the trial court, entered on June 8, 1953, is as follows:

''Now on this day come again the parties, Plaintiffs and Defendants in person and by their respective attorneys, and the Court having heard the evidence at an earlier date and taken the same under advisement now finds the issues in favor of the Defendants on the petition of Plaintiffs.

''It is therefore considered, adjudged and ordered by the Court that the Plaintiffs take nothing by their suit herein against the Defendants but that the same be and is hereby dismissed and that the Defendants, Cecil V. Berns and Doris Berns go hence thereof without day

and have and recover of and from the Plaintiffs, Neil J. Housden and Dorothy M. Housden all costs in this suit laid out and expended, for which execution may issue."

The record discloses that plaintiffs made no request for finding of facts and declaration of law but that after the judgment, to-wit on June 10, 1953, the court filed a memorandum in the cause stating reasons for his decision. We quote from the memorandum as follows:

"* * * The Court decided the issues in favor of the defendants on the theory that the plaintiffs' proof had wholly failed to establish plaintiffs' cause of action. The principal issue in the case was whether or not the trailer purchased by the plaintiffs was actually a 1952 model trailer. Unquestionably, the plaintiffs purchased it relying upon a representation that it was a 1953 model trailer, and the Court feels that this was a material fact and that if the representation was false, either by mutual mistake or by wilful misrepresentation, that the plaintiffs would be entitled to rescind. The only proof plaintiff was able to introduce was the deposition of the editor of the trade journal and the trade journal, itself, which, if admissible, would show that this trailer bearing this serial number was a 1952 model. Defendants' evidence was direct evidence that the trailer was a 1953 model. The Court has not attempted to weigh the evidence or evaluate it, because the Court feels that the plaintiffs' exhibits, to-wit: the deposition and trade journal, are both hearsay and are not admissible in evidence. On this issue, it is true that this evidence might be admissible to impeach the testimony given in the deposition introduced by the defendants, but since it is only impeachment testimony and since there is no other evidence of any nature on the issue, the Court has entered a judgment for the defendants."

The court made a statement that this memorandum was made at the request of plaintiffs after judgment.

Under Section 509.050 R. S. Mo. 1949, V.A.M.S., it is provided that a pleading shall contain a short and plain statement of the facts showing that the pleader is entitled to relief, and a demand for judgment for the relief to which he deems himself entitled.

In Witte v. Cooke Tractor Co., Mo. App., 261 S. W. 2d 651, 660, the following law is stated:

"* * * 'The powers of a court of equity are broad, but they are limited to the cause of action and issues made by the pleadings.' Branner v. Klaber, 330 Mo. 306, 49 S. W. 2d 169, 180; Kramer v. Johnson, 361 Mo. 1085, 238 S. W. 2d 416; 30 C. J. S., Equity, Sec. 608, p. 1005. * * * The general rule that the decree in an equity action must conform to the pleadings applies, and defendant's contention must be disallowed."

In Kemp v. Woods, et al., Mo. Sup., 251 S. W. 2d 684, 688, the court stated the law:

*, ''⁎ ⁎. ⁎ The powers of a court of equity are limited to the cause of action and issues made by the pleadings. Branner v. Klaber, supra. And, in determining the cause of action intended to be pleaded under the new code, we may consider the facts pleaded and relief sought. Foster v. Pettijohn, 358 Mo. 84, 213 S. W. 2d 487, 488; St. Louis 221 Club v. Melbourne Hotel Corp., Mo. App., 227 S. W. 2d 764, 770.' ⁎ ⁎ ⁎''

Following the law as declared by the Supreme Court in this case, the allegations of plaintiffs' petition that the representations made by defendants that the trailer was a 1953 model were false and untrue in that the trailer was a 1952 model and that plaintiffs and defendants were mutually mistaken as to the year model and the condition of the trailer aforesaid, show that plaintiffs based their cause of action for rescission upon mutual mistake of material facts. It was not an action in tort for fraud and deceit.

Under statement of jurisdiction in plaintiffs' brief, plaintiffs made the following statement:

"Plaintiffs sued Defendants for recission of the sale to the former of a house trailer valued at $4,074.90 and for restitution of the status quo ante upon the ground of mutual mistake of material fact. The Circuit Court of Greene County held plaintiffs failed to prove any element of their cause of action and entered judgment for defendants."

Under the pleadings the court was confined to the sole issue of whether or not there was a mutual mistake of material fact, in the sale of the trailer involved in order to grant the relief prayed for by plaintiffs, that is, that the house trailer represented to be a 1953 model was, in fact, a 1952 model.

In this opinion we will refer to appellants as plaintiffs and respondents as defendants.

In an equity action this court will review the record de novo and give such judgment as the trial court should have given. Milgram v. Jiffy Equipment Co., et al., Mo. Sup., 247 S. W. 2d 668; Section 512.160 R. S. Mo. 1949, V.A.M.S.

Under the evidence it is undisputed that plaintiffs purchased the Streamlite Trailer from the defendants on the terms and conditions pleaded in the petition. Defendants admit they represented the trailer to be a 1953 model and testified that the trailer so sold was a 1953 model.

Plaintiffs' exhibit 2, entitled "Official Trailer Coach Guide", 57 Edition, effective January 1, 1953, was offered in evidence. Objection was made as to its admissibility because it did not tend to prove or disprove the issues in the case, that is, the year model of the trailer sold. The trial court did not rule upon the admissibility of the offer, and, in fact, never made a ruling thereon. However, the exhibit was allowed to go into the record and is now before this court.

To support the admissibility of the exhibit, plaintiffs offered the evidence of W. A. Loomis, who testified he was engaged in the trailer sales and service business in Springfield and was familiar with trade involved in house trailers. He was given the serial number of the house trailer sold to plaintiffs by defendants and asked what year model he considered it. Objection was made to this testimony and the court reserved its ruling but permitted the answers to go into the record and the witness testified that his Firm used the Official Trailer Coach Guide, which is the same guide shown by plaintiffs' exhibit 2, as an authentic guide on trailer coaches to determine the year model and resale value of trailers. He stated this was the customary method used by people engaged in buying and selling new and used trailers to determine the model. He testified he considered the model of the trailer in question to be a 1952 model. He stated he based his opinion upon the Official Guide and had no personal knowledge of the matter.

Plaintiffs offered the deposition of S. F. D. Meffley, who testified he has been engaged for 18 years in the business of printing and statistics, associated with Recording & Statistical Corporation in Chicago; that, as special representative of this firm, it was his duty in the year 1952 to superintend the printing of the official guide, to secure data for compiling, printing and distribution of the book; that in 1952 he obtained information from the Streamlite Trailer Company, contained in plaintiffs' exhibit 2; that this data had to do with the specifications, serial numbers, prices and models. He testified he knew of no mistakes made in the preparation of this Official Guide except the price on one occasion; that to the best of his remembrance the facts shown in this Guide were printed as given by the manufacturer. He stated that twice a year a special form was sent to the manufacturer requesting its specifications, and, upon receipt of the executed form, his company would set it up in copy form; that it is then sent to the printer for setting up and when returned for an O.K., his company sends it back to the printer for printing and distribution. He testified they followed the usual procedure in their preparation of guides in making the guide as shown in plaintiffs' exhibit 2. He stated they usually held the specifications received from the manufacturer from three to six months; that the guide was published January 1, 1953, and the information contained in the guide as to Streamlite trailers appears on page 21 and on white section on pages 96 and 97. The official Guide, offered as exhibit 2, shows that 1953 models were started to be manufactured in December, 1952, and that the serial number, as shown on the Streamlite Trailer sold on or about November 1st, was a 1952 model.

Defendant, Doris I. Berns, testified that in dealing in used trailers defendants used the same method, that is, plaintiffs' exhibit 2, in determining the model of the trailer. She testified that this book was generally used by dealers.

Defendant's testimony is to the effect that when they sold the trailer to plaintiffs they represented it to be a 1953 model and that the trailer *was* a 1953 model. They offered in evidence defendants' exhibit "A", which is a Manufacturer's Statement of Origin, which came with the new trailer when purchased from the manufacturer and which showed that the trailer was a 1953 model. Defendants testified that the trailer was a new trailer purchased by them from the manufacturer.

Defendants offered the deposition of Jacob Kosbie who testified that he was president of the Streamlite Trailer Company at Chicago, Illinois, which manufactured the trailer sold by defendants to plaintiffs; that his company sold to defendants a new Streamlite House Trailer, serial No. 5235197 during the first week of September, 1952, and that that trailer was a 1953 model. In answer to a question of how the year model of a house trailer was established or determined by his company, he gave this answer: "A. All trailers manufactured after labor day in each year carries the following year as model."

On cross-examination he stated that his company had supplied information relative to trailers manufactured by it to the Recording and Statistical Corporation, Chicago, Illinois.

The record discloses that plaintiffs offered in evidence exhibit 2, along with exhibit 1, which was the deposition of the Firm which prepared the Official Trailer Coach Guide; that this offering was objected to by defendants and the trial court stated that he would have to read the depositions before making a ruling as to its admissibility. Plaintiffs never insisted or moved that this testimony be ruled on, and, under the authorities in Missouri, are in no position to insist upon this error. Craig v. Miners' Bank of Joplin, Mo. App., 176 S. W. 433, 434; State v. Wana, 245 Mo. 558, 563, 150 S. W. 1065; Smoot v. Bankers' Life Insurance Co., 138 Mo. App., 438, 469, 120 S. W. 719; Gann v. Chicago R. I. & P. Ry. Co., et al., Mo. Sup., 6 S. W. 2d 39, 46; Godsy v. Thompson, Mo. Sup., 179 S. W. 2d 44, 49. This rule, however, does not apply to depositions.

Baker v. Atkins et al., Mo. App., 258 S. W. 2d 16, cited by plaintiffs, was an action for damages based upon false and fraudulent representations as to the year model of an automobile sold. On page 20 of the opinion, the court made this statement:

"* * * Under this assignment, defendant argues that the court erred in admitting certain testimony of plaintiff's witness Lawrey in regard to the model of the car in question. Lawrey testified that for more than three years he had been employed as a salesman by Kansas Motors, Inc., a Ford agency, and during that period had sold several hundred cars; that motors manufactured by the Ford Motor Company 'bear a motor number' and 'that motor number is to designate the year and the type engine that the automobile has'; that 'we have a guide to go by in determining whether such and such a

motor number belongs to such and such a car'; that the guide 'is accepted by all authorized dealers' and 'is called the Red Book'; that he had used the Red Book 'for quite awhile'; that he had never found any mistakes in the book, and did not know of any one who had.''

Lawrey was then allowed to testify, over objection, that the Red Book showed the motor number of the car to be a late 1947 model. The court made this statement of law:

''* * * And it is elementary that where proof is to be made of some fact which is stated in a writing, the best evidence of the contents of the writing is the writing itself. Hence the contents of a writing may not, as a general rule, be proved by parol, unless the failure to produce the writing is accounted for * * *''

The court held that the trial court should have sustained defendants' objection to Lawrey's testimony not only because it was not the best evidence but also because it was hearsay.

In the case at bar, plaintiffs, by their witness W. A. Loomis, undertook to prove that the trailer in question was a 1952 model. The trial court should not have permitted this witness to testify as to the contents of a written document because such testimony was not the best evidence and would be hearsay. Since the book, however, was introduced and one of the defendants testified that it was generally relied upon in the business of buying and selling trailers to determine the model, we think the testimony was harmless.

The next question presented to the court is, was exhibit 2, the Official Trailer Coach Guide, admissible in evidence as an exception to the hearsay rule and did the trial court err in stating in a memorandum, some few days after the rendition of the judgment, that he did not evaluate this testimony because he thought it was inadmissible for any purpose except possibly for impeachment?

We, again, quote from Baker v. Atkins, supra, page 20:

''As stated in Wigmore on Evidence, Vol. VI, sec. 1766, (3d Ed.), 'the theory of the hearsay rule is that, when a human utterance is offered as evidence of the truth of the fact asserted in it, the credit of the assertor becomes the basis of our inference, and therefore the assertion can be received only when made on the stand, subject to the test of cross-examination.' The general rule which excludes hearsay as evidence applies to written as well as oral statements. * * *

''As a general rule a book or other publication printed by a private person or organization is not admissible as evidence of the truth of the facts stated therein. However, in almost every organized occupation there are handbooks and other publications, containing information of every day professional and business need, intended to be circulated publicly and consulted by persons interested, tested by their use, and found by their experience to be trustworthy and actually relied upon in the work of the occupation. Such publications

are generally conceded to be admissible under an exception to the hearsay rule that has never been precisely formulated. They include trade journals reporting prices current, certain commercial and professional lists, registers, reports, business directories, and the like. 32 C. J. S., Evidence, Sec. 717, p. 626; 20 Am. Jur., Evidence, sec. 964 et seq., pp. 812-825; Wigmore on Evidence, Vol. VI, secs. 1702, 1706 (3d. Ed.) It is generally considered necessary, as a prerequisite to the introduction in evidence of such publications, that a preliminary foundation be laid for such evidence, as by showing that such publications are based upon reliable sources of information or that they have been regularly prepared for the use of the trade or profession and are generally regarded as trustworthy and relied upon. In this connection see Howell v. Hines, 298 Mo. 282, 249 S. W. 924; Meriwether v. Quincy, O. & K. C. R. Co., 128 Mo. App. 647, 107 S. W. 434; Fountain v. Wabash R. Co., 114 Mo. App. 676, 90 S. W. 393.''

In the case at bar the testimony offered by plaintiffs, as a prerequisite to the introduction in evidence of the Code offered, was by deposition of the maker of the Code. Generally speaking, it is the province of the trial court to determine whether or not the preliminary foundation laid is sufficient to bring the testimony within the exception to the hearsay rule. However, in the case at bar, we believe that since one of the defendants testified that the Official Trailer Coach Guide was a reliable source of information used by dealers generally and that she and her husband used it in the business of buying and selling Streamlite trailers, the testimony was admissible. But such testimony does not make a prima facie case that there was a mutual mistake as to the model of such trailer.

Under sub-head ''B'', plaintiffs contend that their exhibit 2 was admissible under sections 490.660 to 490.690 R. S. Mo. 1949, making records admissible when made in the regular course of business which is an exception to the evidence—excluding hearsay.

In Milton v. St. Louis Public Service Company, Mo. Sup., 251 S. W. 2d 663, 669, the Supreme Court thoroughly discusses these statutes. We quote:

''Plaintiff-appellant objected on the ground that The Uniform Business Records as Evidence Law, Sections 490.660 to 490.690, RSMo 1949, V.A.M.S., does not apply to hospital records, and, furthermore, that the parts of the record which we have italicized were conclusions and hearsay.

''* * * It is the apparent view of the St. Louis Court of Appeals that our Act now affects the admissibility of hospital records. Russell v. Missouri Ins. Co., Mo. App., 232 S. W. 2d 812. This is also our view. In this connection we note that the term 'business' as used in the Act includes 'every kind of business, profession, occupation,

calling or operation of institutions, whether carried on for profit or not.' Section 490.670.

"Our Act provides, 'A record of an act, condition, or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.' Section 490.680.

"Cases which we have examined are clear in ruling that the statutes making admissible records made in the regular course of business crystallize a rule which is an exception to the evidence-excluding hearsay rule. When the record entry is not of such a character as to give it the status of a *business* entry, the entry is relegated to the status of hearsay and is inadmissible under the hearsay rule. Green v. City of Cleveland, supra. 'In general, the admissibility, under such statutes, of hospital records in accident cases depends upon whether they relate to acts, transactions, occurrences, or events incident to the hospital treatment.' 144 A. L. R. 727, at page 731."

We deem it clear that plaintiffs' exhibit 2, is no part of the record made by the firm who prepares it. The record is not of such a character as to give it the status of a business entry, and, therefore, would not be admissible under these statutes. However, we have found that the testimony is admissible but that such testimony, under the evidence in the case at bar, does not make a prima facie case showing mutual mistake of fact.

We hold that even though the trial court stated in his memorandum after judgment he did not evaluate this testimony, yet such testimony is in the record and this court finds, from all of the record testimony, that plaintiffs failed to make a case.

Plaintiffs' second contention is that the proof of misrepresentation of year model is sufficient to warrant rescission of the contract.

To sustain this contention plaintiffs cite Bunch v. Paxton, et al., Mo. App., 295 S. W. 474.

In this case plaintiff sought to rescind a sale for fraud because of fraudulent representations. Our courts have consistently held that fraudulent representations made as to the model of an automobile are grounds for recission when relied upon by the purchaser and that it is not necessary to prove damage but that is not the issue in the case at bar, where plaintiffs seek to rescind not on the ground of fraudulent representations, but upon mutual mistake of fact. The case cited is not in point.

Plaintiffs cite Jones v. West Side Buick Auto Co., Mo. App., 93 S. W. 2d, 1083, Clancy v. Reid-Ward Motor Co., Mo. App., 170 S. W. 2d 161 and Marquis v. Pettijohn et al., Mo. App., 212 S. W. 2d, 100. These are all cases based upon fraud and are not in point.

1174

There can be no question but that the representation of the trailer purchased by plaintiffs was a material fact and if the evidence on the part of the plaintiffs established that the trailer was in fact a 1952 model and that there was a mutual mistake of such fact it would be ground for rescission. The trial court found that the evidence was insufficient to prove plaintiffs' case.

Plaintiffs' exhibit 2 was evidence to sustain their contention that the Streamlite trailer was a 1952 model but, opposed to this, defendants offered the certificate of origin delivered by the factory to them when the trailer was delivered and it showed the trailer to be a 1953 model. The President of the Manufacturer, which made the trailer and sold it to defendants, testified that the trailer bearing the serial number in question was a 1953 model. The burden of proof was upon the plaintiffs to establish first, that the trailer was actually a 1952 model and that there was a mutual mistake made as to such model, but, we hold, from the evidence shown in the record, that plaintiffs failed to meet that requirement.

A mistake in fact may be relieved against in equity but it must be a mutual mistake of both parties. Cooper County Bank v. Bank of Bunceton, 221 Mo. App., 814, 288 S. W. 95; Wilhite v. Wilhite, 284 Mo. 387, 224 S. W. 448.

A mutual mistake means a mistake shared by both parties. 53 C. J. 945; Burns v. Ames Realty Co., Mo. App., 11 S. W. 2d 71; Words and Phrases, Perm. Ed. Vol. 27 p. 954.

A mutual mistake is one common to both or all parties where each labors under the same misconception respecting a material fact, the terms of the agreement, or the provisions of the written instrument designed to embody such agreement. Misrepresentation or fraud is not essential to proof of a mutual mistake. 17 C. J. S. p. 497, Sec. 144.

In Saline County et al. v. Thorp, et al., Mo. Sup., 88 S. W. 2d 183, 185, the court made this statement of law:

" '* * * Reformation, and ordinary rescission or cancellation, is only granted where there is a mutual mistake. However, there are exceptions made to these general rules in cases where the mistake of one party is either known to the other party or is so obvious, under the circumstances, that it must have been known to him, and the mistake concerns a matter so vital that it can be said that the parties, because of miscalculation or false information, never actually agreed to the same proposition.' "

Under the facts in the case at bar we hold that the trial court was justified in finding that plaintiffs failed to make a case. Having so found, the question as to the admissibility of plaintiffs' exhibit 2, if error, was harmless.

Judgment affirmed. *Stone, J.*, concurs.